CASE 40—PETITION EQUITY—OCTOBER 6.

## Augustus, &c. vs. Seabolt, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

A testator bequeathed to his wife his farm *"during her natural life;"* also two slaves (naming them,) "during her natural life, should she remain a widow;" also *"during*

*her natural life"* sundry articles of personal property, naming them. The will then proceeds: "It is my desire that in case my beloved wife *shall marry, she is only to hold that part of the tract of land and farm which lies eastwardly of the lane and road leading through the plantation.* After that event may take place the balance of the devises made to her are not to be affected by the circumstance of her intermarriage." The testator then directs a sale of his personalty, except that devised to his wife, and if it be sufficient for the payment of his debts, he bequeathes to her *"during her natural life"* a negro man, Aaron. "Item—I give and bequeath the real estate and slaves herein devised to my beloved wife *during her natural life, after her death* to be equally divided between the lawfully begotten children of my brothers John, David, Jacob and James, or *such of them as may be living at the time of her death,* or the said slaves and real estate to be sold and the proceeds to be equally divided among said children, *as aforesaid."* There is no residuary clause in the will. The widow married, and is yet alive. *Held*—That the heirs at law are entitled, by descent, to the land "lying westwardly of the lane," as designated in the will, from the period of the marriage of the widow of the testator until her death, when the devisees in remainder under the devise to them will be entitled.

The intention of the testator must be gathered from the instrument itself whenever it is possible to do so. Every word is to have its effect, provided an effect can be given to it not inconsistent with the general intent of the whole will when taken together; and no word is to be rejected unless there cannot be a rational construction of the will with the word as it is found. Nor is it necessary to take all the words in the order they are, as the courts may range them in a different order and transpose them to comply with the intention. But, in no case, where the words are plain and sensible, is a transposition to be made in order to create a different meaning and construction; much less to let in different devisees and legatees; nor where a former clause is express and particular shall a subsequent one enlarge it.

When a testator in the disposal of his property overlooks a particular event, which, had it occurred to him, he would probably have guarded against, the omission will not be supplied by employing or inserting the necessary clause. And, though the inference of intention be more or less strong, yet, if not necessary or indubitable, the court will not aid the supposed intention by adding or supplying words.

Estates are contingent which are limited to take effect upon the happening of an uncertain and doubtful event, or where the persons, to whom they are limited, are not ascertained or yet in being.

The heir at law never takes by the act or intention of the testator. His right is paramount to and independent of the will, and no intention on the part of the testator is necessary to its enjoyment. On the contrary such right can only be displaced or precluded by direct words or plain intention evincing a desire upon the part of the testator that he shall not take. He needs no argument or construction showing intention in his favor to support his claim. They belong to the party claiming under the will and in opposition to him.

PIRTLE & BALLARD, for appellants, cited 1 *Met. Ky. Rep.*, 514; 3 *Mon.*, 537; 1 *Fearne on Contingent Remainders*, 8; 2 *Ib.*, 150, 427; 18 *B. Mon.*, 368; *Ib.*, 174; 2 *Roper on Legacies*, 1463, 1470-2, 1461, *note;* 2 *Vesey, Sen.*, 74; 19 *Vesey, Jr.*, 653; *Ib.*, 521; 16 *Ib.*, 46; 6 *Munford*, 114; 2 *B. Mon.*, 462; 6 *Ib.*, 313; 8 *Ib.*, 620; 5 *Term Rep.*, 512; 3 *Clark & Finnelly*, 689.

G. A. and I. CALDWELL, for appellees, cited 55*th vol. Law Library, Crabb on Real Property, top page,* 642, *side page,* 976, *sec.* 2343; 5 *Dana,* 442, 444, 295; 23 *Pick,* 287; 16 *B. Mon.,* 312; 14 *Ib.,* 175, 338, 344.

CHIEF JUSTICE STITES DELIVERED THE OPINION OF THE COURT:

This controversy arises under the will of Springer Augustus, and depends upon the construction and effect to be given to the following provisions thereof:

"Item—I give and bequeath unto my beloved wife, Nancy Augustus, the tract of land on which I now reside, with all the improvements of every description, to have and to hold the same *during her natural life.* I also give and bequeath to my beloved wife my negro man named Humphrey, and a negro woman named Clary, and her incerease, if she should have any, to have and to hold the aforesaid slaves *during her natural life, should she remain a widow.*"

"Item—I also give to my beloved wife, *during her natural life,* my wagon, head-gear, &c.," (naming sundry articles of personal property.) "It is my desire that in case my beloved wife *shall marry, she is only to hold that part of the tract land and farm which lies eastwardly of the lane and road leading through the plantation.* After that event may take place the balance of the devises made to her are not to be affected by the circumstance of her intermarriage."

The testator proceeds to direct a sale of all of his personalty, except that devised to his wife, and provides that, if it be not sufficient to pay his debts, his executors shall sell a negro man named Aaron. "But (he adds,) if the personal estate be sufficient for the payment of my debts, I then, in that case, devise and bequeath to my beloved wife, *during her natural life,* the said negro man."

"Item · I give and bequeath the real estate and slaves herein devised to my beloved wife *during her natural life, after her death* to be equally divided among the lawfully begotten children of my brothers John, David, Jacob and James, or *such of them as may be living at the time of her death,* or the said slaves

and real estate to be sold and the proceeds to be equally divided among said children, *as aforesaid*."

There is an entire absence of any residuary clause in the will, and also of any language which tends to show that the testator had, by his will, disposed of his entire property, unless that contained in the foregoing items can be so regarded.

The widow married many years since, and is yet alive, but since her marriage has set up no claim to that part of the farm west of the lane mentioned in the will.

Upon her marriage the executors, supposing they had the right under the will, assumed control over the land west of the lane, and have continued to rent it out for the benefit of the children—now living—of the brothers of the testator mentioned in the will.

Two of the brothers and a sister of the testator—claiming title, as his heirs at law, to that part of the land mentioned, on the ground that the interest therein, after the termination of the widow's estate upon her marriage and before her death was not disposed of by the will, but descended to the heirs at law—brought this suit for a partition of the land, and to compel the executors to account for and pay over their share of the rents and profits.

The relief was resisted by the executors and the children of some of the brothers mentioned in the will—who insisted that the entire estate of the testator passed by the will, and that they (the children.) were entitled to the land and its profits upon the marriage of the widow.

The chancellor refused to award any part of the rents to the heirs at law, and directed the payment of the same to be made to the children of the brothers of the testator—living at the time of the judgment—and of this judgment the heirs at law complain.

The effect of the judgment—though it is not so stated in terms—is to invest the devisees in remainder with an absolute title to the land in dispute from the time of the marriage of the widow of the testator.

The chancellor seems to have founded his judgment upon the idea that the testator intended, by his will, to dispose of

his entire estate, and that such intention is to be gathered from the terms of the will.

If this view be correct, no doubt can be entertained of the propriety of his judgment ; but, on the other hand, if the testator—although, in point of fact, intending to devise his whole estate—has failed to indicate such intent by his will, and, by neglecting to provide for the happening of the contingency of his wife's second marriage, and to dispose of the land in dispute for the period intervening between her marriage, when her right was to terminate, and the time of her death when the devisees in remainder were to take, it follows that, as to said land and all interest therein—whatever it may be—for such intervening time, the testator died intestate, and that the heirs at law will be entitled to the same.

A familiar and well established rule of law in the construction of wills, with a view to the ascertainment of the testator's intention is, that the intention must be gathered from the instrument itself, whenever it is possible so to do. Every word is to have its effect, provided an effect can be given to it not inconsistent with the general intent of the whole will when taken together ; and no word is to be rejected unless there cannot be a rational construction of the will with the word as it is found

Nor is it necessary to take all the words in the order they are, as the courts may range them in a different order and transpose them, to comply with the intention. But in no case, where the words are plain and sensible, is a transposition to be made in order to create a different meaning and construction, much less to let in different devisees and legatees ; nor where a former clause is express and particular shall a subsequent one enlarge it. (*Ward on Legacies*, 204 ; 10 *B. Mon.*, 344 ; 8 *B. Mon.*, 602 )

Another settled rule of construction is, that when a testator, in the disposal of his property, overlooks a particular event, which, had it occurred to him, he would probably have guarded against, the omission will not be supplied by employing or inserting the necessary clause, for, as it is said, "it would be too much like making a will for the testator, rather than con-

struing that already made." And, though the inference of intention be more or less strong, yet if not necessary or indubitable, the court will not for the same reason, aid the supposed intention by adding or supplying words. (*Roper on Legacies*, 2 vol., *pages* 327, 328.)

In the light of these rules let us look at the will in question. Its language is not at all ambiguous. Full effect can be given to each and every word. No transposition is necessary to arrive at the intention of the testator in regard to the objects of his bounty ; nor, in our judgment, is it necessary either to reject or insert any words to ascertain what property actually passed by the will.

It is manifest that the testator, to a certain extent, overlooked the event of his wife's marrying again, and that he did not provide to whom the land "lying westwardly of the lane" should go on the happening of such an event. It is true that he directs that all the real estate devised to his wife shall, *after her death*, go to such of the children of his brothers—naming the brothers—as may be then living ; but they take nothing until *after the death of his wife*, and *then* only those children will take who shall be *then* living. Now, in the absence of any residuary clause in the will, can it be said, from anything in the will that that the testator made, or intended to make, any provision with regard to the contingent estate in the land west of the lane, which would exist upon the marriage of his widow, and continue until her death ? We think not.

His intention that her estate in that part of the land should cease on her marrying again is expressed in so many words ; and as clearly expressed is his intention that the children of his brothers shall not take until after the death of his widow.

To say that he intended the devisees in remainder to take on the marriage of the widow, would not only violate the plain language of the testator; but it might also defeat his will in another respect by letting in, as devisees, persons not intended to be the recipients of his bounty, for it is not to the children alive at the marriage of the widow that he devises his estate, but to those alive at her death.

, It is therefore obvious that the estate of the devisees in remainder in the land in dispute cannot, by any construction of the will, consistent with its language, be made to begin before the death of the widow; and equally plain that the widow's estate therein ceased upon her marriage, thus leaving the land, between the periods designated, undisposed of by the will, and to descend to and vest in the heirs at law until the death of the widow.

That the testator failed to provide for the happening of the contingency upon which his wife's estate in the land was to cease before her death, and omitted to dispose of the estate that might thereby accrue, may have resulted from a belief upon his part that she would not marry, or from sheer negligence, or even ignorance that an estate might thus be created. Be this as it may, the omission cannot be supplied by the court, for, as we have seen, that would be making a will for him rather than construing that which he made. Nor can any mere inference that he really designed to dispose of his entire estate be allowed to prevail here, for such inference as we have seen would be inconsistent with other parts of the will, and is neither necessary nor indubitable.

Neither will it do to say, as is suggested in the opinion of the court below, that it is evident that the testator did not intend to provide for his heirs at law. The heir at law never takes by the act or intention of the testator. His right is paramount to and independent of the will, and no intention upon the part of the testator is necessary to its enjoyment. On the contrary, such right can only be displaced or precluded by direct words or plain intention, evincing a desire upon the part of the testator that he shall not take. He needs no argument or construction, showing intention in his favor, to support his claim. They belong to the party claiming under the will and in opposition to him, and it is therefore unnecessary here that there should be any inference of intent on the part of the testator in favor of the heirs at law to entitle them to the land.

But it is said that the remainder interest of the devisees was a vested one, and took effect as completely upon the marriage of the widow as though she had died. This view is clearly

erroneous.   The remainder is manifestly contingent in one re-
spect, and cannot therefore be properly denominated a vested
remainder.

Estates are contingent which are limited to take effect upon
the happening of an uncertain and doubtful event, or where
the persons, to whom they are limited, are not ascertained or
yet in being.   (*Fearne on Remainders, vol.* 1, *page* 5 ; *3d Mon.*,
537 ; 18 *B. Mon.*, 368.)

Here the estate in remainder is limited to take effect upon
the happening of a certain event—that is, the death of the
widow ; but it is limited to such of the children, of the brothers
designated, as shall be living at her death.   Whether any of
such class will then be alive, or if so, how many, is of course
uncertain, and cannot be known until the event occurs.

The precise character of estate which the children take under
the will it is not now important to determine, further than to
say that it is not a vested' remainder, taking effect upon the
marriage of the widow, and thus excluding the heirs from their
interest in the land in controversy, during the period interyen-
ing between her marriage and death.

Our opinion, therefore, is, that the heirs at law àre entitled
to the land "lying westwardly of the lane," as designated in
the will, from the period of the marriage of the widow of the
testator until her death, when the devisees in remainder, under
the devise to them, will be entitled to the whole estate ; and
we think the chancellor erred in refusing appellants relief to
the extent herein indicated.

Wherefore, the judgment is *reversed*, and cause remanded
for further proceedings not inconsistent with this opinion.