## Babcock and Others *v.* Orbison and Another.

SALES ON COMMISSION—DILIGENCE.—A shipped to B, who was a commission merchant in the city of *New York*, thirty thousand pounds of clover seed to be sold on commission, without any special instructions as to the terms of sale. B sold the seed to C, who was a dealer in good standing for solvency. The sale was regarded as a *cash* sale, but by the usage of the trade in *New York*, the buyer had from three to seven days to make payment. The bulk of the seed was delivered on the 6th, 7th and 8th days of *December*, but it was not all delivered till the 11th. On the 8th, and again on the 10th and 12th of *December*, payment was requested, but C was unable to pay. On the 29th of the month B took from C a bill of exchange drawn on his consignee in *Liverpool, England,* to whom the seed had been shipped, for the amount due for A's seed and also for other produce sold to C for account of other parties. The bill was dishonored. B did not advise A of the sale of the seed, or of C's failure to pay for it, until the 29th. On the week succeeding the sale of the seed it was put on ship board, consigned to *Liverpool*, but it did not appear when the ship sailed. On the 7th and 14th of *December*, C drew two bills of exchange on his consignee in *Liverpool* for £1098, and attached to them, as collateral security, what purported to be bills of lading, signed by him, for the full amount of the seed.

*Held*, that B was the special agent of A, and as such it was his duty to observe toward his principal the utmost good faith, to exercise all reasonable diligence in protecting his interests, and, in the absence of special instructions, to sell only for cash on delivery.

*Held*, also, that the papers signed by C, and attached to the bills of exchange drawn by him, not being signed by the master of the ship, were not bills of lading, and could not vest in the holders any right to the seed as against A.

*Held*, also, that when B became apprised, as early as the 12th of the month, that C was unable to pay for the seed, it was his duty to have repossessed himself of it, or at least to have given prompt notice to A, so that he might have taken the necessary steps to protect his interests, and having failed to do either, B took upon himself the risk of C's failure and must bear the loss.

APPEAL from the *Allen* Common Pleas.

ELLIOTT, J.—In this case, *Hill* and *Orbison,* the appellees, sued *Babcock & Co.* and recovered a judgment on an account.

The only questions presented in the case, arise upon a set off pleaded by the appellants, and they are very clearly and

fully stated in the special findings of the court below, which are as follows, viz:

"There is due to the plaintiffs from the defendants on the account set up in the complaint the sum of $136 80 with interest, in all $150 80, which the plaintiffs are entitled to recover."

"In reference to the set off of the defendants, the following facts are found:

"The plaintiffs are, and at the time the matters in controversy arose were, produce dealers, doing business in the city of *Fort Wayne*, in the State of *Indiana*. The defendants at the same time were commission merchants in the city of *New York*.

"Some time before the 3d day of *December*, 1860, the plaintiffs had forwarded to the defendants, to be by them sold on commission, clover seed to the amount of 32,322 pounds.

"No specific instructions were given by the plaintiffs to the defendants as to the manner of sale, as to cash or credit. The seed was forwarded simply for sale, and was received by the defendants at the city of *New York* on the 3d day of *December*, above mentioned. The defendants made a sale of the seed to one *John F. Dustan*, who was a produce shipper in good standing as to solvency, and in good repute. This sale was regarded as a cash sale, made in accordance with the usage of trade in the city of *New York*, by which usage the purchaser for cash of some kinds of produce, including clover seed, has from three to seven days, or perhaps longer, after the purchase and delivery of the property, to pay for the same.

"Prior to the sale, the defendants made reasonable inquiry as to the standing and solvency of *Dustan*, which appeared to be satisfactory.

"The bulk of the seed was delivered on the 6th, 7th and 8th days of the month, but it was not all delivered until the 11th.

"On, or about, the 8th of the month, the defendants made out a bill of the seed, and sent a clerk with it to *Dustan* for payment. *Dustan* did not decline to pay, either because the seed had not all been delivered, or because the usual time of payment had not expired, but simply because he had not the money. He told the clerk to call again in a day or two, when he expected to have the money. On the 10th or 12th of the month, Mr. *Babcock,* one of the defendants, called upon *Dustan* for payment, but the latter was unable to pay, saying, that he had made, and was making every effort to sell bills drawn on his produce. He was also unable to give any security, but proposed to give the defendants a bill of exchange drawn by him on his consignee in *England.*

"Thus matters stood until the 29th day of the same month, when the defendants took from *Dustan* a bill of exchange drawn by him on his consignee, *James H. Butler,* of *Liverpool, England,* payable fifteen days after sight, for something over eleven hundred pounds sterling.

"This bill covered other produce sold by the defendants to *Dustan* for other parties, as well as that sold for the plaintiffs. The bill was made payable to Messrs. *Schuhardt & Gebbard,* bankers, *New York,* and was so taken for convenience, and because the defendants thought it would be more likely to be honored than if made payable to themselves. The bill was forwarded to the drawee, and returned dishonored, and the clover seed has not been paid for by *Dustan,* who is insolvent.

"The defendants did not advise the plaintiffs of the sale of the clover seed, or of the facts connected with it, until the 29th of the month, when they wrote the plaintiffs as follows: 'We sold your seed at 9c. per pound on the 3d of the month. We shall not realize the money for it within 60 days, although sold for cash. It was sold to a shipper to *Europe,* and in consequence of his not being able to sell his exchange he could not pay us. The consequence was, we

had to take a bill of exchange on *London*, and wait 60 days before it can be collected, or we can realize the money.'

"The defendants did not know at the time they took the bill of exchange whether *Dustan* had shipped or disposed of the clover seed, nor had they made any investigation or effort to ascertain whether such was the case.

"On the week succeeding that of the purchase, the seed was shipped by *Dustan* on board of the ship *Constitution*, consigned to *James H. Butler*, of *Liverpool*, to be sold on *Dustan's* account, and the bills of lading forwarded.

"What time the vessel sailed from *New York* does not appear. On the 7th of the month above mentioned, *Dustan* drew a bill of exchange on *Butler*, his consignee, for £700, in favor of *John Stewart & Co.*, and also drew what he calls a bill of lading for 251 bags of the clover seed, and attached it to the bill of exchange as collateral security. This bill of exchange, with the paper attached as collateral security, he sold to *J. & J. Stewart & Co.*, of *New York*, at the current rate of exchange, realizing therefor something over $3,111. On the 14th of the same month, *Dustan* drew another bill of exchange on his consignee, in favor of *Duncan, Sherman & Co.*, of *New York*, for £398, and also drew another paper, which he also called a bill of lading, for 138 bags, being the residue of the clover seed; which bill of exchange, with the paper attached, he sold at the current rate of exchange, for which he realized $1,772.

"Other than the above, no interest had been acquired by any third person in the clover seed on the 12th day of *December*, 1860, nor does it appear how soon thereafter any such interest was acquired.

"The net proceeds of the clover seed, at the price for which it was sold by the defendants to *Dustan*, amounted to $2,585 81, for which amount the defendants, before the dishonor of the bill, had given the plaintiffs credit on their books, for convenience in keeping the accounts, but not for the purpose of charging themselves with it absolutely. And the defendants, also, in anticipation of the payment

of the bill of exchange, or the collection of the claim from *Dustan*, accepted and paid bills drawn by the plaintiffs upon them, to the amount of the proceeds of the clover seed.

"The plaintiffs have not by any positive act, or by their silence, released the defendants from any supposed liability for negligence in failing to notify them sooner of the sale of the clover seed, and *Dustan's* inability to pay for the same.

"The bill of exchange taken by the defendants of *Dustan* has never been offered to, or received by, the plaintiffs."

The court further found, as a conclusion of law, arising upon the facts so specially found, that the defendants, the appellants in this court, could not maintain their set off.

The only error assigned is, that "the court below erred in refusing a new trial, when the same should have been granted, for causes assigned in the written motion therefor, and in rendering judgment for the appellees, when it should have been for the appellants."

The causes for a new trial are: "1st. That the conclusion of law of the court, as above set out, is erroneous, in this: That it does not appear that the seed in question was, for a reasonable time after the delivery thereof to *Dustan*, within the jurisdiction of the *United States*, or any State thereof, so that the same might have been reclaimed by the plaintiffs if they had had notice.    2d. That the *onus* is upon the plaintiffs to show negligence on the part of the defendants, by which they were injured, which, from the finding aforesaid, they have not done; wherefore said conclusion of law, upon said finding, is erroneous."

The plaintiffs below sought to defeat the set off of the defendants, by showing that the loss of the clover seed resulted from their carelessness, and it is true that the *onus* of that fact was upon the plaintiffs. The evidence is not in the record, and we must take the facts to be as they are presented by the special finding of the court.

It is stated in the special finding that it does not appear at what time the vessel on which the clover seed was shipped sailed. The seed was shipped to the defendants, as commission merchants, for sale. They were the special agents of the plaintiffs, and, as such, it was their duty to observe toward their principals the utmost good faith, and to exercise all reasonable diligence in protecting their interests. It was their duty, in the absence of instructions to the contrary, to sell only for cash on delivery. The sale was considered a cash sale, but by the custom of merchants, existing in the city of *New York, Dustan,* the purchaser was entitled to from three to seven days after the delivery of the seed, to pay for it.. Payment was demanded on the 8th, and again on the 10th or 12th of the month, and refused, not because the time allowed by the custom had not expired, but simply because he had not the money and could not raise it, and the defendants were then notified that *Dustan* could not give them any security for the amount.

It may be inferred that the ship had not sailed at that time, as the last of the seed was only delivered to *Dustan* on the 11th of the same month.

The refusal of *Dustan* to pay for the seed, and his inability to give any security for the money, was notice to the defendants of the danger that threatened its loss; yet they made no effort to secure it in any manner, nor did they give the plaintiffs any notice of its condition, or even of the sale, until the 29th of the month, when they received from *Dustan* the bill of exchange on *Butler,* the consignee in *England,* which also covered produce sold to *Dustan* for other parties. At the time they received this bill of exchange, the defendants "did not know whether *Dustan* had shipped or disposed of the clover seed, nor had they made any investigation or effort to ascertain whether such was the case."

The reasons for the conclusion of law arrived at by the court below are fully and clearly stated in the record before

us, and contain, as we think, the law applicable to the case; we therefore adopt and copy them, substantially, as the opinion of this court.

Although the defendants may not have been guilty of negligence in selling the seed to a person who found himself unable to pay for it, according to the usage in such cases, still, when the defendants found, at least as early as the 12th of *December*, that *Dustan* was unable to pay, it was their duty to have again taken possession of the seed for the plaintiffs, which, for aught that appears, might have been done; or to have instituted legal proceedings for that purpose; or, at least, to have given the plaintiffs reasonable and prompt notice of the facts, so that they might have taken such steps as were necessary to protect their interest. A delay to give such notice until the 29th was unreasonable, under the circumstances, and amounted to such negligence as to make the defendants responsible for any damages sustained by the plaintiffs in consequence of the want of such notice.

. At the time the defendants were notified that *Dustan* could neither pay for the seed, nor secure the payment, there seems to have been no reason, in fact or in law, why the plaintiffs, if properly notified, could not have repossessed themselves of the property, and thereby saved the entire amount. By the sale to *Dustan*, the title did not pass to him absolutely, but only conditionally until payment. *Fleeman* v. *McKean*, 25 Barb. 474; *Dows* v. *Dennistoun*, 28 *id.* 393. Nor had any title been acquired by any third person that could have prevailed against the plaintiffs. It may be conceded that had *Dustan* procured a proper bill of lading of the clover seed, and transferred it by assignment, the assignee would have acquired a good title, even as against the plaintiffs. *Blossom* v. *Champion*, 28 Barb. 217; *Dows* v. *Green*, 24 N. Y. 638. But nothing of the kind transpired in this case.

. A bill of lading is to be signed by the master of the ship, and by it he agrees, as a common carrier, to deliver the

goods to the consignee, or his order.    3 Kent 291, 10th ed.; *Covill* v. *Hill*, 4 Denio 323.   It is evident that the papers made out by *Dustan* on the 7th and 14th days of *December*, and attached to the bills of exchange then drawn and sold by him, were not bills of lading, although he called them such.   They do not appear to have been signed by any one, unless by *Dustan* himself.   He drew them, and the inference is that he only signed them.   That such papers are not bills of lading is fully established by the case of *Covill* v. *Hill, supra.*   And not being bills of lading, they could vest in the purchaser no better right to the seed than *Dustan* himself had, and none that could prevail against the plaintiffs.

Under these circumstances, we think the defendants, by failing to take any steps to repossess themselves of the seed, or to notify the plaintiffs of the facts, when they could, probably, have taken effective measures to protect their interests, took the risk of *Dustan's* failure upon themselves, and must bear the loss.

The judgment is therefore affirmed, with five per cent. damages and costs.

*R. Brackenridge*, for appellant.

*W. H. Coombs* and *J. Morris*, for appellees.