ROBERT BISHOP *vs.* ELISHA L. PALMER & others.

Suffolk.   November 10, 11, 1887. — April 6, 1888.

Present :  MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Contract — Consideration — Covenant — Restraint of Trade.*

A purchaser promised to pay in instalments for a business plant and property, in consideration of its sale and delivery, and the performance of three particular covenants and agreements by the seller, the first of which was a general agreement, without any limitation of space, that for and during the period of five years he would not either directly or indirectly continue in, carry on, or engage in that business or any business of which that might form any part.   *Held,* that the covenant was void as being in restraint of trade, and that, not being severable from the rest of the consideration, no action would lie on the promise for instalments of the price.

CONTRACT.   Writ dated November 1, 1886.   The first count of the declaration alleged that the defendants owed the plaintiff

$2,500 for breach of a written agreement signed by the parties and annexed thereto, the material parts of which were as follows:

"This agreement, made this sixteenth day of March, A. D. 1886, by and between Robert Bishop, of Boston in the Commonwealth of Massachusetts, party of the first part, and Elisha L. Palmer, Frank L. Palmer, Edward A. Palmer, and George S. Palmer, copartners together, doing business under the firm name and style of Palmer Brothers, at Montville in the State of Connecticut, parties of the second part; and the Massasoit Manufacturing Company, a corporation doing business at Fall River in the Commonwealth of Massachusetts, party of the third part, witnesseth:

"That whereas said party of the first part is engaged in the business of manufacturing and selling bedquilts and comfortables, and is also engaged in the business of buying, selling, and dealing generally in cotton waste; and whereas he is desirous of selling out his business as a manufacturer of bedquilts and comfortables, together with all his plant, machinery, and stocks, manufactured and unmanufactured, now on hand, and of wholly giving up and going out of said business for the next five years, and is also desirous of selling that part of his cotton waste business which is done or transacted in whole or in part in the city of Fall River, in said Commonwealth, and with any and all of the mills doing business in said city:

"Now therefore, in consideration of the premises, and of the sum of five thousand dollars ($5,000) to be paid by the parties of the second and third parts in the manner and at the times hereinafter specified, the party of the first part hereby sells, assigns, transfers, and delivers unto the parties of the second part his entire business plant and enterprise as a manufacturer of and dealer in bedquilts and comfortables, together with the good will of said business, and all and singular, the machinery, implements, and utensils used by him in said business, and constituting said manufacturer's plant. . . . .

"And for the consideration aforesaid, said party of the first part hereby sells, assigns, transfers, and conveys to the party of the third part all that portion of his waste business which is transacted or done in the city of Fall River, in the Common-

wealth of Massachusetts, with any and all corporations doing business in said city; and he hereby assigns and transfers to said party of the third part all his existing contracts, whether verbal or written, with any of such corporations, or with firms or persons, and all rights thereunder, including rights of renewal; and also the good will of his said business and trade with the corporations in said city of Fall River. This clause does not have reference to buying and selling from individuals. It being the intention of said party of the first part absolutely and completely to sell and transfer to said party of the third part his entire cotton waste business, trade, and dealings, and the exclusive right to deal and do a cotton waste business with and purchase cotton waste of any and all of said corporations, for the period of five years from the date hereof.

" And said party of the first part hereby, for himself, his executors, administrators, and assigns, covenants and agrees with said parties of the second and third parts and each of them, and their executors, administrators, successors, and assigns respectively, that for and during the period of five years from the date hereof he will not either directly or indirectly, in his own name or in the name of any other person or persons, continue in, carry on, or engage in the business of manufacturing or dealing in bedquilts or comfortables, or of any business of which that may form any part.

" And he further covenants and agrees as aforesaid, that for and during said period he will not enter into the cotton waste business in said city of Fall River with any corporation, firm, or person located and doing business in said city; and especially that he will not, directly or indirectly, in his own name or in the name of any other person, buy, or influence, or procure other persons to buy, any cotton waste from said mills, in said city of Fall River, or belonging to or controlled by any corporation located in said city, and that he will not, either directly or indirectly, make any bid therefor, or influence any other person so to do, in connection with the waste business in said city, or the purchase of waste from such parties.

" And he further covenants and agrees that he will not buy or offer to buy of any person whatever the waste produced by the corporations known as the Granite Mills, Troy Cotton and

Woolen Mills, Richard Borden Manufacturing Company, and Pocasset Manufacturing Company.

"And the said parties of the second and third parts, in consideration of the sale and delivery of said business, plant, and property, and said cotton waste business and contracts, and the faithful performance of the covenants and agreements herein made by the party of the first part, agree to purchase said business plant and property, and said cotton waste business, and to pay therefor to said party of the first part the sum of five thousand dollars in ten equal monthly instalments, the first five hundred dollars to be paid on the first day of July, 1886, and the remaining instalments on the first day of each month thereafter, until all are paid."

The declaration contained a second count, upon an account annexed, for the recovery of the same amount.

The defendants demurred to the declaration, assigning the following grounds of demurrer:

"1. That the allegations, matters, and facts set forth in said declaration, and in each count thereof, do not in law constitute a cause of action against these defendants, or either of them. 2. For the reason that the contract annexed to the plaintiff's declaration, a breach of which is set forth in the first count thereof as the cause of action relied on therein, and which contract is referred to in the second count of said declaration, for a breach of which the sums claimed in said second count purport to be due, is an unlawful contract and a contract in restraint of trade, is against public policy and void, and cannot be enforced at law. 3. That both counts appear to be for the same cause of action, and the cause of action set forth in each count arises under said contract for a breach thereof by the defendants in failing to pay the plaintiff the amount claimed in said counts; but it appears by said contract that one of the considerations for said payments was the covenants and agreements of the plaintiff therein not to manufacture or be interested in the manufacture or sale of bedquilts and comfortables, as therein set forth, anywhere whatever, and without any limitation as to place, during the period of five years therein named, and also the covenants and agreements of the plaintiff in said contract to the effect that he will not enter into competition with the Massasoit Company,

one of the defendants, at Fall River, for the purchase of cotton waste, or bid therefor directly or indirectly against or in competition with said company for said waste; all of which agreements, covenants, and considerations are illegal and void, in restraint of trade and against public policy, and fraudulent, and said contract is illegal and void, in restraint of trade and contrary to public policy, and cannot be enforced by the plaintiff. 4. That it appears by said contract that the considerations of any and all the agreements and undertakings of the defendants therein, for a breach of which the plaintiff sues, are illegal and void, and that said contract is illegal and void, and in restraint of trade and contrary to public policy, and void."

The Superior Court sustained the demurrer, and ordered judgment for the defendants, and the plaintiff appealed to this court.

*W. Gaston & C. L. B. Whitney*, for the plaintiff.

*R. D. Smith & H. E. Bolles*, for the defendants.

C. ALLEN, J. The defendants' promise which is declared on was made in consideration of the sale and delivery of the business, plant, property, and contracts of the plaintiff, and of his faithful performance of the covenants and agreements contained in the written instrument signed by the parties. The parties made no apportionment or separate valuation of the different elements of the consideration. The business, plant, property, contracts, and covenants were all combined as forming one entire consideration. There is no way of ascertaining what valuation was put by the parties upon either portion of it. There is no suggestion that there was any such separate valuation, and any estimate which might now be put upon any item would not be the estimate of the parties.

It is contended by the defendants that each one of the three particular covenants and agreements into which the plaintiff entered is illegal and void, as being in restraint of trade. It is sufficient for us to say that the first of them is clearly so; it being a general agreement, without any limitation of space, that for and during the period of five years he will not either directly or indirectly continue in, carry on, or engage in the business of manufacturing or dealing in bedquilts or comfortables, or of any business of which that may form any part. Thus much is virtually conceded by the plaintiff, and so are the authorities. *Taylor*

v. *Blanchard*, 13 Allen, 370.   *Dean* v. *Emerson*, 102 Mass. 480. *Morse Twist Drill Co.* v. *Morse*, 103 Mass. 73.   *Alger* v. *Thacher*, 19 Pick. 51.   *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64.   *Davies* v. *Davies*, 36 Ch. D. 359.   2 Kent Com. 466, note *e*. Met. Con. 232.

Two principal grounds on which such contracts are held to be void are, that they tend to deprive the public of the services of men in the employments and capacities in which they may be most useful, and that they expose the public to the evils of monopoly.   *Alger* v. *Thacher*, *ubi supra*.

The question then arises, whether an action can be supported upon the promise of the defendants, founded upon such a consideration as that which has been described.   As a general rule, where a promise is made for one entire consideration, a part of which is fraudulent, immoral, or unlawful, and there has been no apportionment made or means of apportionment furnished by the parties themselves, it is well settled that no action will lie upon the promise.   If the bad part of the consideration is not severable from the good, the whole promise fails.   *Robinson* v. *Green*, 3 Met. 159, 161.   *Rand* v. *Mather*, 11 Cush. 1.   *Woodruff* v. *Wentworth*, 133 Mass. 309, 314.   *Bliss* v. *Negus*, 8 Mass. 46, 51. *Clark* v. *Ricker*, 14 N. H. 44.   *Woodruff* v. *Hinman*, 11 Vt. 592. *Pickering* v. *Ilfracombe Railway*, L. R. 3 C. P. 235, 250.   *Harrington* v. *Victoria Graving Dock Co.* 3 Q. B. D. 549.   2 Chit. Con. (11th Am. ed.) 972.   Leake Con. 779, 780.   Pollock Con. 321.   Met. Con. 247.

It is urged that this rule does not apply to a stipulation of this character, which violates no penal statute, which contains nothing *malum in se*, and which is simply a promise not enforceable at law.   But a contract in restraint of trade is held to be void because it tends to the prejudice of the public.   It is therefore deemed by the law to be not merely an insufficient or invalid consideration, but a vicious one.   Being so, it rests on the same ground as if such contracts were forbidden by positive statute. They are forbidden by the common law, and are held to be illegal.   2 Kent Com. 466.   Met. Con. 221.   2 Chit. Con. 974.   *White* v. *Buss*, 3 Cush. 448, 450.   *Hynds* v. *Hays*, 25 Ind. 31, 36.

It is contended that the defendants, by being unable to enforce the stipulation in question, only lose what they knew or were

bound to know was legally null; that they have all that they supposed they were getting, namely, a promise which might be kept, though incapable of legal enforcement; and that if they were content to accept such promise, and if there is another good and sufficient consideration, they may be held upon their promise. But this argument cannot properly extend to a case where a part of an entire and inseparable consideration is positively vicious, however it might be where it was simply invalid; as in *Parish* v. *Stone*, 14 Pick. 198. The law visits a contract founded on such a consideration with a positive condemnation, which it makes effectual by refusing to support it, in whole or in part, where the consideration cannot be severed.

The fact that the plaintiff had not failed to perform his part of the contract does not enable him to maintain his action. An illegal consideration may be actual and substantial and valuable; but it is not in law sufficient.

The plaintiff further suggests that, if the defendants were to sue him on this contract, they could clearly, so far as the question of legality is concerned, maintain an action upon all its parts, except possibly the single covenant in question. *Mallan* v. *May*, 11 M. & W. 653. *Green* v. *Price*, 13 M. & W. 695; *S. C.* 16 M. & W. 346. This may be so. If they pay to the plaintiff the whole sum called for by the terms of the contract, it may well be that they can call on him to perform all of his agreements except such as are unlawful. In such case, they would merely waive or forego a part of what they were to receive, and recover or enforce the rest. It does not, however, follow from this that they can be compelled to pay the sum promised by them, when a part of the consideration of such promise was illegal. They are at liberty to repudiate the contract on this ground; and, having done so, the present action founded on the contract cannot be maintained; and it is not now to be determined what other liability the defendants may be under to the plaintiff, by reason of what they may have received under the contract.

*Judgment affirmed.*