## WESLEY et al. v. CHANDLER.

No. 19771. Opinion Filed July 21, 1931.

Rehearing Denied Oct. 13, 1931.

J. J. Bruce, for plaintiffs in error.

Twine & Twine and Chandler & Turnage, for defendant in error.

SWINDALL, J. This action was brought upon a conveyance and agreement dated March 2, 1926, conveying a law prac'ice of the plaintiffs, who were then located at Muskogee, Okla., and also conveying the property used in connection with the practice; the instrument of conveyance also expressly conveyed the good will and recited an agreement on the part of the sellers not to engage in the practice of law in the state of Oklahoma, "during the period of this agreement, except as necessary to complete and dispose of cases, contracts, and matters in effect at the time of this agreement." The exception referred to a part of pending business. which had been expressly reserved from the conveyance, but it is impossible to understand what was meant by "during the period of this agreement," unless we refer it, as we must, to the period during which the agreement was intended to remain in any respect executory, which would be the date of maturity of the last installment payment.

The purchaser agreed to pay a purchase price of $5,000, which agreement was divisible, not, however,. as apportioned to the various things done and promised by the sellers, but only as to times and amounts of installment payments, $1,000 of which was to be paid on the execution of the agreement, $2,000 on or before March 1, 1927, and $2,000 on or before March 1, 1928.

The defendant paid only the initial installment of $1,000, and after the maturity of the last installment. the plaintiffs sued to recover the balance of the agreed purchase price, alleging full performance of the agreement on their part. A demurrer was sustained to the original petition, and the same ruling was made as to a demurrer presented to an amended petition which set forth the facts as outlined above. The plaintiffs stood on the amended petition and appeal from the order sustaining the demurrer to it.

The only question involving the merits of the controversy is whether the amended petition stated a cause of action in spite of an illegal agreement in restraint of trade.

(1) The plaintiffs apparently considered themselves entitled to enforce the express promises of the defendant. Under the common-law procedure, such recovery would be in the form of action which was known as special assumpsit, a form of case, and should the plaintiffs be held not entitled to recover on the express promises of the defendant, they would fail in the action, regardless of whether or not the facts alleged showed them entitled to other relief. That condition is strikingly described by Pollock and Maitland in their History of English Law, vol. 2, p. 559, in the following language:

"The metaphor which likens the Chancery to a shop is trite; we will liken it to an armory. It contains every weapon of medieval warfare from the two-handed sword to the poniard. The man who has a quarrel with his neighbor comes thither to choose his weapon. The choice is large; but he must remember that he will not be able to change weapons in the middle of the combat and also that every weapon has its proper use and may be put to none other. If he selects a sword, he must observe the rules of sword play; he must not try to use his cross-bow as a mace. To drop metaphor, our plaintiff is not merely choosing a writ; he is choosing an action, and every action has its own rules."

Whether certain facts constitute a cause of action is determined by the substantive law, which was not altered or modified by the Code of Civil Procedure. The Code did, however, expressly abolish distinctions between forms of actions and reduce all civil actions to one form, in which a plaintiff is only required to allege facts constituting some cause of action. If a plaintiff does that his petition is not demurrable, and that is so although his prayer for relief may disclose that he is in error as to the theory of recovery. A., T. & S. F. Ry. Co. v. Rice, 36 Kan. 593, 14 Pac. 229; Turben v. Douglass, 76 Okla. 78, 183 Pac. 881; Fraley v. Wilkinson, 79 Okla. 21, 191 Pac. 156.

The petition is good if the facts alleged entitle the plaintiffs to any relief.

(2) At first agreements in restraint of trade were those made by craftsmen and tradesmen having only a localized trade or business, and at a time when a craftsman was required to follow only his trade, and at that time the laws permitted no restraint.

Y. B. 2 Hen. V. pl. 26; Colgate v. Bacheler, 2 Cro. Eliz. 872 (43 and 44 Eliz.); Williston on Contracts, vol. 3, sec. 1634, and cases cited.

But it is now generally held in jurisdictions where the courts are not bound by the arbitrary terms of a statute reflecting medieval economic ideals, that, on the sale of a business, trade, or professional practice, restraint is permitted to the extent that it is reasonably necessary in time and space to protect the business, trade, or practice sold. Mitchel v. Reynolds, 1 Pere Wms. 181 (1711); Williston on Contracts, vol. 3, secs. 1634 and 1641, and cases cited. But this permissible scope is subject to the condition that the agreement does not tend to create a monopoly, and to the possible qualification that even though the business sold is unlimited in extent geographically, the restrictive promise must not be. Williston on Contracts, vol. 3, sec. 1641. For the citation of numerous cases tracing the development of the law with respect to agreements in restraint of trade, see Hall Mfg. Co. v. Western Steel & I. Works, 227 Fed. 588, L. R. A. (N. S.) 1916C, 620.

But, in Oklahoma, the permissible limits have been fixed by statute, rigidly, and without regard to the breadth and scope territorially necessary to protect that which is conveyed. The statutes are section 5071, 5072, and 5073, C. O. S. 1921, which read as follows:

"(5071) Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than as provided by the next two sections, is to that extent void.

"(5072) One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or part thereof, so long as the buyer, or any person deriving title to the good will from him, carries on a like business therein.

"(5073) Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town where the partnership business has been transacted, or within a specified part thereof."

Among the grounds on which agreements in unreasonable restraint of trade are held illegal, are the injury to the seller and those dependent upon him by reason of the deprivation of his rights, and the injury to the public resulting from unreasonable lessening of competition, or the creation of, or the tendency to create, a monopoly. It would seem that our Legislature was concerned to an inordinate degree with the possible injury to the public.

This case is not one where the entire object of the agreement is unlawful, as in case of an intent or attempt to create a monopoly, and in cases like the one under consideration there is a willingness on the part of the court to enforce the agreement of the parties to the extent that it is divisible and the legal part can be segregated from the illegal, the legal being enforced, unaffected by the segregated illegal portion of the agreement. Pride v. Green, 16 M. & W. 346; Williston on Contracts, vol. 3, secs. 1659, 1660, and cases cited; Oregon Steam Nav. Co. v. Winsor, 20 Wall. 64, 22 L. Ed. 315; Trenton Potteries Co. v. Oliphant, 58 N. J. Eq. 517, 46 L. R. A. 255, 78 Am. St. Rep. 612, 43 Atl. 723; Nordenfelt v. Maxim Nordenfelt Guns & Ammunition Co. (1894) A. C. 565, 6 Eng. Rul. Cas. 413.

In cases of this character there is always divisibility as to what the seller does and promises, as the conveyance of a business or profession, and the conveyance of the good will, are distinct from the agreement or agreements in restraint of trade. As to the agreement or agreements in restraint of trade, the rule is that, if the parties have not so expressed such agreement or agreements that a divisible legal promise or divisible legal promises are expressed by the parties themselves, the courts will not attempt to make a division, and the agreement or agreements will wholly fail. Williston on Contracts, vol. 3, sec. 1659, pp. 2925, 2926, and cases there cited.

But it has been suggested by high authority that, if a sharply defined line separates a restraint which is excessive territorially from such as is permissible, there seems no reason why effect should not be given to the restrictive covenant indivisible in terms to the extent that it is lawful, citing with approval the case of Ragsdale v. Nagle, 106 Cal. 332, 39 Pac. 628, where such line was drawn by the provisions of the statutes, as in Oklahoma, making a restrictive promise accompanying the sale of good will lawful to the extent of the county or city where the business was carried on. Williston on Contracts, vol. 3, sec. 1660, p. 2926, note 37. The same author refers to cases where covenants unlimited as to time were divided the same way, citing Baines v. Geary, 35 Ch. D. 154; Oregon Steam Navigation Co. v. Winsor, supra; Harris v. Theus, 149 Ala. 133, 43 So. 131, 10 L. R. A. (N. S.) 204, 123 Am. St. Rep. 17; Gregory v. Spieker, 110 Cal. 150, 42 Pac. 576, 52 Am. St. Rep. 70; and also citing Meyers v. Merillion, 118 Cal. 352, 50 Pac. 662, to the effect that a time limit

which the court held unreasonable was enforced for the length of time during which the promisee remained in business, not exceeding the limit fixed by the contract. As a matter of fact, the case last cited was decided under a statute which fixed the limit, as is the case with the Oklahoma statute, and the agreement was held to be legal for the time fixed by the statute, not exceeding the agreed term.

This principle applies to our statute, and the agreement in restraint of trade was legal to the extent of Muskogee county so long as the buyer or any person deriving title to the good will from him might carry on the business (up to March 1, 1928), those being the legal statutory limits permissible with reference to space and time, the agreements with reference thereto being by the statutes declared void **only as to the agreed excess**, if any.

But, aside from the fact that it cannot be known that the parties would have made any agreement narrower than the one actually made, the agreement here is also indivisible in the sense that what was promised by the buyer is indivisible, although what was done by the sellers was divisible.

(3) In such a case, while the agreement is wholly executory, the law recognizes no contractual obligations as springing from it, because it will not enforce performance of the covenant so far as it is in illegal restraint of trade. And so, from the indivisibility of the buyer's promise, it results that we cannot find either a definite offer or acceptance made with respect only to the legal. For authorities to the effect that partial illegality in such cases renders an indivisible executory agreement unenforceable, see: Williston on Contracts, vol. **3**, sec. 1782, pp. 3092-3. This is not only a common-law principle that is operative, but it is a most elementary principle of contract law, that the existence of an express contract depends upon a definite offer and acceptance, so that we have a promise or set of promises to which the law attaches legal obligation. Since in this case, part of which has been agreed upon is unenforceable, and there is only one indivisible agreement, no enforceable agreement results, and either party can refuse to perform while the agreement is wholly executory. Williston on Contracts, vol. 1, sec. 103e, p. 213, vol. 3, sec. 1782, p. 3093. This rule has been enacted into a declaratory statute in Oklahoma, section 5022, C. O. S. 1921, which reads as follows:

"If any part of a single consideration for one or more objects, or of several consider-

ations for a single object, is unlawful, the entire contract is void."

(4) However, if the one making the indivisible promise fully performs, that principle is no longer operative against him, and, upon performance, the divisible legal promise or promises of the other become binding; he cannot deny that he made such promise or promises in return for the indivisible promise, notwithstanding the fact that he also promised something additional. Nothing that he did not promise would be enforced against him, and he would have received all that was promised him in return. Williston on Contracts, vol. 1, sec. 106, p. 223; vol. 3, sec. 1779, p. 3089, sec. 1780, p. 3091; Starr v. Lowery, 102 Okla. 48, 220 Pac. 467.

(5) What seems to be the usual inference from partial illegality, that where the agreement is not divisible it taints the whole agreement, is, therefore, not applicable to cases where the illegal part of the agreement is merely unenforceable and recovery is permitted on the legal part if the agreement is divisible. It would seem that if illegality would be sufficient to taint an entire agreement, it would deny recovery on each and every part of it. Williston on Contracts, vol. 3, sec. 1660, p. 2926. But if the case is one where the legal, if separable, would be enforced, where an indivisible promise is made there is merely a want of consideration caused by the unenforceable illegal part of the agreement. It seems to us that a distinct understanding of this as the operative principle in this class of cases is necessary to avoid a pitfall caused by the careless use of expressions erroneously supposed to be generally applicable.

Another reason often advanced in explanation of the right of the one performing the indivisible promise to recover is that he has performed a legal consideration. It is true that he has performed a promise not in its nature unlawful, and it is also true that no additional penalty is visited upon him for such performance, but we do not like the expression. It does not seem that it can be denied that he has performed an illegal agreement. The indivisible promise seems dual in nature, having been given for the legal and for the illegal indiscriminately. By performing, the party has certainly performed his part of an illegal agreement, and he has done the one thing calculated to induce performance of it by the other party; he has paid for it. If parties are in pari delicto, surely such form of statement should not induce discrimination.

The fact that he is permitted to recover

indicates that the only result of the illegality is that the illegal is unenforceable, and that the only effect on the remainder of the agreement is that it causes as to that a lack of consideration.

This seems the only conclusion to be drawn from the decisions, and it seems in accord with the theory of the highest authority on contract law. Williston on Contracts, citations, supra.

Further, the performance of the indivisible promise furnishes the differential that permits recovery, and it permits it in spite of the fact that it necessitates the performance of what is illegal, that is, an illegal agreement, although not an act illegal in itself.

Since the only result of this sort of illegality is unenforceability, and it is the very performance of the illegal that enables one in pari delicto to recover, we may well ask on what theory it is urged that the other party can wholly be denied recovery. Certainly it would not be merely because of having violated public policy; and certainly he cannot be denied recovery for mere lack of a promise if it should be held that recovery could not be had upon the promise.

(6), (7), (8) Forfeitures are abhorrent to the law, and before we deny recovery and thereby cause a practical forfeiture of the valuable properties that have been conveyed and the recompense for valuable legal things done, we should hesitate and be assured that our position is secure.

It has even been held that reasonable restraints of trade in connection with the sale of a business are beneficial to society. They are not illegal in nature in such cases, but only because of their scope. They are part and parcel of a broader agreement which involves sale of business and good will. The limits of a reasonable restraint is a matter upon which courts have differed and upon which the brightest lay minds may well materially differ. The parties are bound by the law, but in most instances they do not know the law. In the ordinary case no appreciable injury to the public would result from too broad a restraint, and in the ordinary case it is doubtful if the restraint is too broad. Usually it is an inadvertent overstepping of a line difficult to draw and impossible to draw even under our statute without a knowledge of the law. For this we are asked to deny a recovery, which might in many instances forfeit the savings and accumulations of a lifetime, reduce a party and his dependents to want or even charity, or make them dependent upon the public, and furnish one of the most usual causes of suicide, financial stress and worry, and which would in any case forfeit rights and interests for an altogether trivial infraction of public policy.

It may be that when promises not conditional were independent and one could recover in spite of a breach, leaving the other to his action, partial enforcement of a promise would have seemed strange, but we are not concerned with merely historical investigations. It is, however, interesting to note that promises were independent, when not conditional, when the statement was first advanced that partial illegality invalidated an indivisible promise. It is also true, probably, that most instances of illegality in those days were instances of immorality and the sort of cases in which even to-day partial illegality would taint the entire agreement.

Since the days of Lord Mansfield, soon after the dependency of promises had been recognized, it was held that although the full consideration for a binding promise had not been performed, there was liability on the promise, subject, however, to the right to counterclaim or sue for damages suffered by such failure. So, the mere fact that the consideration has not been furnished does not authorize a defense on the ground that the promisor has not received performance of that for which he promised. The test is whether or not the breach goes to the root of the agreement, or, as it is often expressed, whether the performance has been substantial, and performance is regarded as substantial, even though not sufficiently complete as to prevent liability in damages for the partial failure of performance. Williston on Contracts, vol. 2, sec. 841, pp. 1609-12.

This special form of illegality was in England in the last century considered so weak that if the seller had fully performed, he could even enforce payment for his entire performance, the illegal as well as the legal, but such evidently has never been the law in the United States. Williston on Contracts, vol. 3, sec. 1650, p. 2909.

However, it is interesting to note that no case has been cited in which an agreement in too broad restraint of trade was held to disentitle the seller to any recovery. Bishop v. Palmer, 146 Mass. 469, 4 Am. St. Rep. 339, 16 N. E. 299, one of the cases on which the defendant chiefly relies, only refused to enforce the indivisible promise, and expressly commented on the fact that what the seller might be entitled to recover for the benefits conferred on the buyers was not before the court. Also, every other case that we have found has permitted recovery,

and the recovery has been on the promise. They will be hereinafter specifically considered.

We have the greatest regard for the decisions of the Massachusetts court, but it seems to us that, in the case of Bishop v. Palmer, supra, it used expressions that fail to reflect the effect of illegality in this class of cases. It held that the partial illegality tainted the whole agreement, and said that the illegal consideration was positively vicious. It also said that for the partial illegality, the **law visits its condemnation upon** the whole agreement, **except in cases where the agreement is divisible.** As has been said, that does not, in our opinion, express the principle upon which the whole agreement fails to become obligatory while executory. The court admitted that it might well be that the party making the indivisible promise after his full performance could enforce the legal agreements of the other, saying that in such a case he would merely waive or forego a part of what had been promised. We cannot understand how one can be considered as waiving that to which he is not entitled. The most he could waive would be the right to ask for it. We see no reason to depart from our theory of the proper explanation of the reason why the party who made the indivisible promise is permitted to recover, and it would seem that if partial illegality caused the law to visit its condemnation upon the whole agreement, neither party could in any event recover.

On the other hand, in Fishell v. Gray (N. J.) 37 Atl. 607, the court permitted recovery and allowed it on the express promise. Permitting recovery, it evidently saw no reason why it should be quasi ex contractu. The court expressly refused to admit that in the modern law partial illegality that was not immoral or criminal illegalizes everything that it touches, and, while admitting that there was an illegal agreement in restraint of trade, it distinguished it from a covenant to do an illegal thing.

In Nicholson v. Ellis, 110 Md. 322, 73 Atl. 17, 24 L. R. A. (N. S.) 942, the court granted foreclosure on a mortgage securing a note given upon an agreement in restraint of trade. The promise was recited to be for the conveyance of stock and good will, and the covenant in restraint of trade appeared near the end of the agreement, and the court construed it as having been an afterthought and considered that the promised consideration was really promised for the stock and good will. Full recovery was allowed. We are not convinced of the correctness of the interpretation of the agreement, but we fully concur in the conclusion that the plaintiff should recover. Here again the court refused to concede that illegality of this character tainted the entire agreement.

There seem to be few cases in point, and the law, strangely, seems at this late day to be in the formative period on the question, at least, as to whether recovery can be had on the agreement. In a note in 24 L. R. A. (N. S.) at page 944, the annotator said with reference to the question of divisibility:

"It is doubtful whether these rules are applicable in actions against a covenantee. As to him, the consideration paid is an entirety, covering the unlawful as well as the lawful covenant, and therefore not subject to severance even though the restraining covenant is clearly divisible. Bishop v. Palmer, 146 Mass. 469, 4 Am. St. Rep. 339, 16 N. E. 299, is the only case found wherein the question has arisen as to the divisibility of such a contract in an action against the covenantee, and that case sustains the view that the consideration for such a contract, being an entirety, covering both the lawful and unlawful portions, and made in consideration thereof, cannot be apportioned or severed, and hence cannot be enforced as against the covenantee."

As above observed, even the Massachusetts court only denied recovery on the promise. A court may refuse to divide a promise, but to say that it cannot do so is to overthrow much of the law that has grown up under the theory of the dependency of promises. To hold a promise to be independent may render the promise of the other valueless, and to refuse to apportion a promise may, by destroying the quality and nature of the obligation, in like manner render the relief given by the law quasi ex contractu likewise valueless. In fact, it was danger of loss that was principally responsible for holding promises to be dependent. In Kingston v. Preston, 2 Doug. 689, Lofft. 194, the defendant had covenanted to give up his business to the plaintiff on credit, and the plaintiff had covenanted to give security for the deferred payment. To treat these covenants as independent would obviously make the covenant to give security practically worthless, and Lord Mansfield held that the plaintiff could not recover without alleging and proving the giving of security." Williston on Contracts, vol. 2, sec. 817, pp. 1566-7. And later, before the end of the Eighteenth Century, Lord Kenyon said:

"Suppose the purchase money of an estate was 40,000L, it would be absurd to say that the purchaser might enforce a conveyance without payment, and compel the seller to have recourse to him, who perhaps might be an insolvent person. The old cases cited

by the plaintiff's counsel have been accurately stated; but the determination in them outrages common sense." Quoted in Williston on Contracts, vol. 2, sec. 819, p. 1569.

These considerations require us to determine the theory of recovery, even though in this particular case the sellers extended credit and took no security.

Under the old law, one could recover on an independent promise, notwithstanding breach of his promise, the other being left to his action upon that, but after recognition of the dependency of unconditional promises, the respective rights could be worked out in one action, and it was logical and just to hold that even though the promises were dependent, a breach would not necessarily bar recovery, as a counterclaim could serve the same purpose as an independent suit. So, the very judge, who introduced the theory of dependency of promises in bilateral contracts, very soon afterwards held that if a plaintiff had partly performed and a breach by him went only to part of the consideration and could be compensated in damages, the plaintiff might recover. "The principle thus established has been uniformly followed." Williston on Contracts, vol. 2, sec. 841, p. 1609. But if the breach goes to the root of the agreement, or, as is often said, the promise is not substantially performed, there can be no recovery on the promise.

"In the nature of the case precise boundaries are impossible. The question which must be decided is whether on the whole it is fairer to allow the plaintiff to recover, requiring the defendant to bring a cross-action or counterclaim for such breach of contract as the plaintiff may have committed, or whether it is fairer to deny the plaintiff a right of recovery on account of his breach, even at the expense of compelling him to forfeit any compensation for such part performance as he has rendered. The decision of this question must vary with the special circumstances of each case. Nevertheless, some principles may be laid down. Where several promises are made by one party, a breach of one of them necessarily goes only to part of the consideration, but it may be a large part, or it may be a small part. A breach of a separate collateral promise of minor importance will not justify refusal by the other party to perform, if the main promise to him has been or is being substantially performed. On the other hand, even though the breach occurs after part performance, if it is of such a material or essential character as to go to the root of the contract, further performance by the injured party is excused." Williston on Contracts, vol. 2, sec. 841, pp. 1609-1612.

There is a striking analogy between contract, part performance and breach where there was a binding executory contract, and agreement, part performance and unenforceability, even though the agreement was not binding as an executory contract. Denying recovery for what is unenforceable is identical with denying recovery for the part unperformed of a promise or promises wholly binding.

There seems no more reason for excusing this buyer from his promise than there would be in the case of a breach of a wholly enforceable agreement which constituted an executory contract. We are now concerned with what has been done, and not merely with what was promised, and the buyer cannot deny that what was done was a very substantial part of that for which he promised, and that it was done with reference to the promise. Having failed to elect to defend while the agreement was wholly executory, and having accepted the conveyance of the business, the physical properties, and the good will, and having had the benefit of the covenant to the extent that it was legal (and illegal as well, it having been fully performed), it is not just that he be permitted to avoid liability on his promise by denying that he made it for what he got that was legal. He might have denied that he made it for what he could get that was legal, as long as the agreement was wholly executory, but not after such part performance as prevented any failure of performance going to the root of the agreement. We have a species of election, not a conscious election, possibly, but, nevertheless, an election. He could have done one thing, but he did the other. Election does not depend upon intention or upon a knowledge of the facts. Williston on Contracts, vol. 2, secs. 684, 685, pp. 1320-1324. Nor upon knowledge of their legal effect. Williston on Contracts, vol 2, sec. 698, p. 1349. We often find the same condition in connection with a contract induced by fraud which results in failure of consideration. The executory agreement is held voidable rather than void, but that is merely for the benefit of the party defrauded, that he may have an election to rescind or permit performance with a right of recovery or counterclaim for the failure of consideration. If he does not learn of the fraud until rescission has become impracticable, he is bound by his promise, notwithstanding the failure of consideration, and yet, he never consciously had a right of election. It is true that in that case the agreement is held binding and a contract, with a right of avoidance, but that is merely for the benefit of the party defrauded. In this case the agreement is not binding while executory, be-

cause neither can enforce it fully. The distinction does not go to the essence after rescission of what has been done has become impracticable. The rights turn not upon what might have been done, but upon what was done. In this case it was done with reference to the promise (the written promise here was concurrent with the transfer), and we shall not disregard the promise, nor shall we permit the buyer to disregard it.

In many cases partial illegality may go to the root of the agreement, and we do not say that this would not be so in many cases where the law would still enforce the legal part of the agreement if it were divisible. And we do not say that even in case of conveyances of a business, or at least of a professional practice, where the value inheres principally in personality and individual reputation, the unenforceable part might not possibly go to the root of the agreement. It does not seem that it would be held to do so, but as to that we express no opinion. However, in this case, where there has not only been the conveyance of the practice and good will, but there was also a covenant in restraint of practice which was legal to the extent of the county of location and sufficient in time, we cannot concede that the unenforceability went to the root of the agreement. We do not count on the fact that even the illegal part of the covenant has been performed.

The theory of dependency was introduced to effect security in the performance of a promise, and striking it down would not only destroy the promise, but would also strike down its qualities and character; it is wholly unnecessary to the administration of justice in this case, and in a similar case there might be securities to be enforced to the extent that the promise was enforceable, or there might be no intention to extend credit, and we feel that to strike down the promise would be taking a long step backwards, and one that it is wholly unnecessary to take.

It being against the policy of the law to permit recovery for performance of the illegal part of the covenant in restraint of trade, the proper measure of damages is, in our opinion, that part of the whole sum promised that the value of that legally done bears to all that was done and promised. This will permit recovery for the practice, the good will, the physical properties conveyed, and the value of the legal part of the covenant in restraint of trade, and deny recovery only for the covenant so far as it exceeded the limits of Muskogee county in space.

If our theory is correct, then in all cases where partial illegality does not deny recovery on the legal considerations in a divisible agreement there should be a partial recovery even upon an indivisible promise if the unenforceable part does not go to the root of the agreement.

A theory of liability prior to full performance of the indivisible promise has been advanced in Wald's Pollock, Contracts (3d Ed.) which, in the language of Professor Williston, is as follows:

"That if A., even before performing himself, elected to sue upon B.'s lawful promise and take judgment upon it alone, this would operate as an assent by A. to an agreement to perform his promise in return for B.'s lawful promise, thereby binding both parties."

Professor Williston's comment upon that is:

"Perhaps A.'s consent should rather be treated as a question of fact in each case. If not liable on the contract, he should be quasi-contractually." Williston on Contracts, vol. 3, sec. 1782, note, p. 3094.

In case of an agreement wholly executory, the necessity for an actual new promise seems clear. But, in a case where there has been partial performance, we see no reason why the promise should not be binding if the unenforceable part is not such that, if it had been legal, a failure to perform it would have been a breach wholly excusing performance of the promise. The test of failure going or not going to the root of the agreement seems to meet both situations.

It may seem that we have gone to considerable trouble to merely conclude that, in case of an indivisible promise, such as is here involved, the analogy between unenforceability and breach of promise furnishes a test as to whether the indivisible promise is partly enforceable or wholly unenforceable, but it seemed that the matter was governed by certain fundamental principles, the application of which has been generally indirectly denied by the use of general expressions not at all applicable to the particular sort of illegality involved.

We acknowledge ourselves greatly indebted to Professor Williston for the clear, concise, and correct statements found in his treatise on the law of contracts. We found it of great help. It is the work of unexcelled merit. For the conclusion that there should be permitted at least recovery quasi ex contractu for benefits conferred, and the conclusion that if the unenforceability in cases of this kind does not go to the root of the agreement recovery can be had on the promise, we assume full responsibility, believing it to be

a necessary conclusion from an analysis of the cases and a proper application of the principles involved.

The judgment of the trial court is reversed, with instructions to set aside the order of dismissal and reinstate the case, to set aside the order sustaining the demurrer to the amended petition, and to enter an order overruling said demurrer and further proceed in accordance with this opinion.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, and KORNEGAY, JJ., concur. ANDREWS and McNEILL, JJ., absent.