Bosworth, Ch. J.
The plaintiff testified that “ the testimony mentioned in the agreement” sued on,“ was intended to be an answer to the Morey and Johnson patent,” which patent the present defendants were charged with infringing. By the agreement in question, the defendants covenanted to pay the plaintiff $2,000, “ upon the condition that the information possessed by the said Poliak, or the testimony given by him, shall have been such as has led to the satisfactory termination of said suits, to "the interest of said” defendants; and also to “pay, from time to time, to said Poliak, during the progress of said suits, all his actual traveling expenses, and the usual per diem ($25) of a scientific expert, while acting as such for said” defendants.
*120 The plaintiff covenanted to “ hold himself in readiness at all times to give his testimony or to impart his information as above, as an expert in said matter.”
He brings this suit to recover the $2,000, and also $200 for eight days’ attendance in Hew York as an expert, between the 4th and 15th of September, 1857, on a motion in the U. S. Circuit Court for an injunction in one of the suits named in said agreement, and the further sum of $60 for traveling expenses.
At the time when the plaintiff charges for attending as an expert, he made an affidavit in behalf of the defendants, which was read on said motion, and he testifies that he. made it “in accordance with the terms of the said agreement.” It bears date September 10th, 1857, and tlfe motion was made on the 12th.
I think no one, carefully reading the agreement, can doubt that the plaintiff would never have agreed to attend as a witness, and impart as such the information which he had, upon an agreement merely to pay his traveling expenses, and $25 per day. If he would, the present defendants had no inducement to pay $1,000 down, or agree conditionally to pay $2,000 more. It is a just inference that the plaintiff insisted upon all the conditions and stipulations in his favor which the agreement contains.
And I think it equally clear that both parties contemplated that one mode of Poliak’s imparting his information, and the important and efficient mode, would be, his testimony as a witness on the stand, and by affidavits, to be used, whenever affidavits could be used, according to the practice of the Courts; that it is an essential ingredient in every part of the agreement that his information is to be presented by him as a witness, although it was also to be stated to counsel in consultations and otherwise, as might be useful; and that the agreement to pay the $25 per day and traveling expenses, was essentially induced by the conditional bonus for which he stipulated., and which all parties expected he would earn by giving testi *121 mony which would, according to the terms of the agreement, entitle him to it.
This idea is enforced by the circumstances under which the claim is made in this suit for eight days’ attendance. The complaint alleges that Poliak attended on those days “ in pursuance of said agreement, * * as a scientific expert.” He testifies that he so attended as an expert; but he further testifies that he then, “in accordance with the terms of said agreement, made an affidavit which was used on the 12th of September, 1857, in behalf of the said defendants on a motion argued during such attendance.”
This implies that he considered it a part of his duty as a scientific expert under such agreement, to give testimony and make affidavits, and in that way impart information in execution of the contract on his part.
I therefore regard the consideration entire, and the agreement in its object and purpose indivisible. (Barton v. Port Jackson, &c., 17 Barb., 397, and cases there cited.)
An agreement by which a person is to be paid a stipulated sum for giving testimony, on the condition that it leads to the termination of a suit favorable or satisfactory to the other contracting party, (who is a party to such suit,) is illegal and void, as having a direct and manifest tendency to pervert the course of justice. (Stanley, adm'r, v. Jones, 7 Bing., 369.) Such an agreement as strongly contravenes public policy, and is as deserving of condemnation, as that denounced by Lord Chief Justice Wilmot, in 2 Wilson’s R., 349, (Collins v. Blantern.)
In Yeatman v. Dempsey, (7 J. Scott, N. S., 628,) there was no condition in regard to the effect or results of the defendant’s testimony. His right to compensation for his time and expenses, and professionally, was not made dependent on any such condition. And in that case, when his counsel, arguendo, stated the proposition, viz.: “ A contract such as this, which almost amounts to a conspiracy to get up a case against the lady, is manifestly contrary to public policy;” he was answered by Erle, Ch. J., thus: “There is no plea of illegality, and no point *122 of this sort was reserved; it therefore is not open to you.” (Id,. 634.)
There is nothing in the facts of that case, nor in anything said by the Judges, which militates at all against the decision in Stanley v. Jones, (supra.)
Any agreement which has a direct and manifest tendency to. pervert the course of justice, is illegal and void. By the agreement in question the plaintiff, as a condition to earning his $2,000, is to give testimony which will produce a stipulated result. The pernicious tendency of such a contract is so obvious, that it is unnecessary to state it. And, as an integral part of the same contract, he is to hold himself in readiness to give his'testimony, or impart his information as an expert, either in the form of affidavits to be made a basis of judicial action, or orally as a witness upon the stand. The whole agreement is void.
The interest of the State to convict persons guilty of crimes, is the reason of the rule which authorizes a reward for information that will establish their guilt. If it so happen that the person earning the reward becomes necessarily a witness, that result is accidental, and the objection goes to his credit and not to his competency.
With the wisdom of that rule we have nothing to do. It is a special case founded on considerations of public policy; and whether public justice as a whole is subserved by it, is a question which does not affect the case before us. (1 Greenl. Ev., § 411.) If the rule is to be abrogated or modified, it must be done by the Legislature and not by the Oourts.
I think the judgment should be affirmed.
Hoffman, J.
The agreement, which is the subject of
the présent action, may be analyzed and developed into the following statements and stipulations:
A statement and admission by the defendants that the plaintiff was in the possession of certain knowledge and information on the subject of sewing machines, which had *123 been obtained by him at a large outlay of time and money, which was of great importance to the defendants in certain suits then pending, in which they were interested as parties, and that they were desirous of availing themselves of such knowledge and information in such suits.
A sufficient admission by the defendants, that the plaintiff was an expert, and competent to render beneficial services as such.
An agreement by the defendants that they will, upon-the delivery of the instrument, pay the plaintiff one thousand dollars, as on account of moneys already expended by him.
Another stipulation by the defendants, that they will thereafter pay, that is, as soon as the said suits shall have been terminated in favor of the defendants, in any manner, “ the further sum of $2,000, which said further payment shall be upon the condition that the information possessed by the said Poliak, or the testimony given by him, shall have been such as has led to the satisfactory termination of said suits, to the interest of the said party of the first part.”
“A further agreement by the defendants to pay, from time to time, to said Poliak, during the progress of said suits, all his actual traveling expenses, and the usual per diem ($25) of a scientific expert, while acting as such for said defendants.” Then, secondly, in a distinct paragraph, Poliak covenants, in consideration of the premises, and of the aforesaid sum of $1,000, that he “ will hold himself, at all times, in readiness to give his testimony, or to impart his information as above, as an expert in said matters.”
Let us suppose that the whole contract was the recital of the plaintiff’s knowledge and qualifications, his agreement to impart it, and to testify as an expert, and then the stipulation by the defendants to pay the $1,000, and the $2,000, upon the condition in the first clause of the first article of the agreement. I have a strong opinion that such a contract could not be sustained; and hence that, so *124 far as the $2,000 is sued for, this action will not lie. It is unequivocally an engagement with Poliak to pay that sum of money to him, if the defendants find it expedient to examine him, and they win the cause through his testimony. It is true the information possessed and imparted might have been sufficient to secure a favorable result, without examining him, but yet the covenant is plainly this: If it is found necessary to use you as a witness, you shall have $2,000, provided the cause is won by your testimony.
I cannot think it safe to test the validity of such a contract, either by any speculation as to the nature of the evidence the party can give, or by the character of the evidence actually given by him on a trial. It may be, that there was no necessity for calling the plaintiff as a witness, except to authenticate the copy of the specification. It may be, that nothing else was anticipated, but it cannot be said that the necessity or utility of a far more extended examination might not arise. The agreement covers this contingency, tempting the party to partial or false testimony. A contract like this is against public policy by the common law, because it injuriously affects the administration of justice. (14 N. Y. R., 289, 292.)
In Stanley v. Jones, (7 Bing. R., 369,) the agreement to communicate such information as would enable the party to recover a sum of money by action, and to exert influence to procure evidence to sustain the claim, upon condition of receiving a portion of the sum recovered, Was adjudged illegal. After discussing it as a case of champerty, the Court say: “If there is any difference between this contract and direct champerty, it appears to us to be strongly against the legality of the contract, as the bargain to furnish and procure evidence for the consideration of a money payment in .proportion to the effect produced by such evidence, has a direct and manifest tendency to pervert the course of justice.”
The position thus taken is not at variance with the decision in Yeatman v. Dempsey, (7 J. Scott, N. S., 628.) *125 Services had been rendered in collecting testimony, and time employed and money spent, with a promise to attend the trial, upon an engagement by the plaintiff to compensate the defendant, a medical man. Such a contract, the. case upholds. Such a contract is free from the vice of making compensation to depend upon the force of the testimony of the witness.
But, secondly, in my opinion, a contract single and independent, limited to the recital in the present agreement, to a stipulation by Poliak to hold himself at all times in readiness to give his testimony, or impart his information as an expert, and a covenant by the defendants to pay him from time to time his traveling expenses, and the 825 per day for his services in aiding counsel, and his assistance generally, would be valid and binding. (Yeatman v. Dempsey, 7 J. Scott, N. S., 628; Webb v. Page, 1 Carr. & Kir., 23.) These cases are not at variance with the authorities which hold, that upon the taxation of costs against an unsuccessful party, there cannot be an allowance to experts for time spent in experiments, &c., to prepare for the trial, except in the case of medical men. (Severn v. Olive, 3 Brod. & Bing., 72, and the cases cited.)
In my judgment, there would be a right of action upon a contract so restricted.
Can, then, this agreement be so severed in its parts, as to allow that to be sustained which if it stood alone would be valid, and that to be rejected, which, by itself, is illegal? I think this is the only question of doubt in the case.
The forms in which illegality is traceable in a contract, may generally and in substance be thus stated. Either there is illegality in the consideration for the undertaking, which a party is called upon to perform, or is sued for not performing; or illegality in the stipulation he has made, though none in the consideration. Again, there are modifications of such cases; as where there are several considerations for the thing undertaken, some of which are legal and others illegal; or several undertakings of the party sued, some lawful and others unlawful, yet on one *126 valid entire consideration; or several undertakings with some valid and other invalid considerations.
The case of Arkwright v. Cantrell, (7 Ad. & Ellis, 565,) is an example of a consideration being wholly valid, and part of the grant or subject transferred invalid, and the rest legal. It was sustained for the legal portion. In consideration of a fine and rent, the lord of a manor granted the mines in a district, and the office called bar-master, grantable by him. Such officer was to supervise the mines and to do justice between miner and miner, as well as between miner and the lord. The grant of the office was held void from incompatibility with the interest taken as lessee or farmer.
Nicholls v. Stretton, (10 Queen’s Bench R., 346,) is a case similar in principle. The consideration for .various covenants was one and the same, and was legal: A covenant to do business for existing clients was sustained; one relating to future clients was rejected as invalid. They admitted of separation.
So also in The Bank of Australasia v. Breillat, (6 E. F.. Moore Priv. Coun. R., 152,) the Court say: “From Pigot’s case, (11 Coke’s R., 26,) to the latest authorities, it has always been held, that when there are contained in the - same instrument distinct engagements, by which a party binds himself to do certain acts, some of which are legal, and some illegal at common law, the performance of those which are legal may be enforced, though the performance of those which are illegal cannot.”
In the same instrument, directors had bound the company to payment of money used for proper purposes, and had attempted, also, to bind it to other covenants, which were assumed to be ultra vires. x
There is much variety of authority upon the point whether, if the promisé sued upon is entire, and one of several considerations moving it is illegal, an action can be sustained, there being also a good consideration.
In Deering v. Chapman, (9 Shepley R., 488,) a promissory note was given partly for spirituous liquors sold in *127 violation of a statute, and partly for proper items of demand. It was held that the note was wholly void. No action could be supported for part.
In Woodruff v. Hinman, (11 Vermont R., 592,) the action was upon a promissory note, the principal consideration of which was the costs and expenses of a criminal prosecution, improperly discontinued. The sum of $10 was included, on a legal demand. No action could be supported. If part of the consideration was simply invalid, it would do; not, when it was contrary to law.
Burt v. Place, (6 Cow., 431,) is strongly in point to the same effect. The illegality was a violation of a statute.
In Jarvis v. Peck, before me as Assistant Vice Chancellor, (1 Hoffman’s R., 479,) it was held, that when it is evident an agreement has been made upon considerations, one of which, if it stood alone, would have supported the contract, its® union with an invalid one shall not destroy - the contract. With an exception where the contract contains a provision violating a positive statute, and/.ándther exception, where it is for an act malum in se, I consider this conclusion most consonant to the principles of justice, and at least as consistent as the opposite doctrine with, the - analogies of law. '
When the case was before the Chancellor on appeal, he affirmed the decree on one ground, and observed that it was not necessary to consider this question. “It would be seen, however, by a reference to, the case of Bunn v. Guy, as reported by Mr. Smith, that Lord Elleítboeoxjgh takes that ground distinctly. His Lordship, at the conclusion of his argument, says: ‘ Here is a boryl for the payment of money, and unless the consideration is bad by the statute, the bond is good, if any part of the consideration is good.’ See 1 Smith’s R., 11. A similar opinion was expressed by him in the case of Newman v. Newman, (4 Maule & Selwyn, 70.)”
In Carleton v. Woods, (8 Foster’s N. H. R., 290,) notes were given for goods sold. They included sales of spirit *128 uous liquor, made illegal by a statute. Under the money counts, it was held, that a recovery could be had for the other articles. There was a divisible contract.
Yundt v. Roberts, (5 Serg. & Rawle, 139,) was the case of a note, given for a tavern reckoning, which, exceeding twenty shillings, was void by statute. It included other items of account, unobjectionable. It was held good for the latter.
In Frasier v. Thompson, (2 Watts & Serg., 235,) the defendants had purchased goods at different times of the plaintiff. He bought also pills alleged to have been spurious, and fraudulently imposed upon him. This purchase amounted to $150. The note was for $400. A judgment on verdict for the balance was affirmed. The contracts were separate and distinct. The good could be separated- from the bad. It made no difference that the contracts were made at the same time, provided the considerations were not so blended as to form but one consideration.
Mr. Chitty (On Contracts, 657) says, that the-test whether a demand connected with an illegal transaction is capable of being enforced at law is, whether the plaintiff requires any aid from the illegal transaction to establish his case.
This is approved by the Court in Rose v. Truax, (21 Barb., 361,) in Buck v. Albee, (26 Vermont R., (3 Deane,) 184,) and in Gray v. Hook, (4 Comst., 449.)
The summary of part of the law on this subject seems to me well stated in Rose v. Truax, ut supra. “If any part of an indivisible promise, or any part of an indivisible consideration for a promise, is illegal, the whole is void, and no action can be maintained on it. An illegal element being incorporated in an instrument, in which the bargain is one, the consideration one, and the covenant one, the whole is vitiated.”
I refer also to the strong language of Comstock, Justice, in Curtis v. Leavitt, (15 N. Y. R., 1-96.,) Mr. O’Conor’s able and full argument led to this conclusion: “A doc *129 trine which is expressed in the words, ‘ void in part void in toto,’ has often found its way into books and judicial opinions, as descriptive of the effect which a statute may have upon deeds or other instruments which have in them some forbidden vice. There is, however, no such general principle of law as the maxim would seem to indicate. On the contrary, the general rule is that if the good be mixed with the bad it shall nevertheless stand, provided a separation can be made. The exceptions are: First, where a statute, by its express terms, declares the whole deed or contract void, on account of some provision which is unlawful; and, second, where there is some all-pervading vice, such as fraud, for example, which is condemned by the common law, and avoids all parts of the transaction, because all are alike infected.”
But the case becomes complicated when we find one of several covenants in an agreement perfectly lawful, induced by several considerations, some of which are good, and others illegal, and other illegal covenants induced by the same considerations. I confess I think that the true rule, <3 even here, would be that we can apply what is valid as a consideration, to what is. valid as a promise, unless the instrument shows plainly that the good promise would not have been made without the unlawful consideration <■ predominating, or at least concurring.
But if the legal undertaking is severed, or fairly severable and distinct; if the legal consideration is also severed or severable; if, without dealing arbitrarily with the language of the contract, we can conclude that the lawful motive influenced the lawful stipulation, without being compelled to find that the unlawful one necessarily combined in producing it, then, in my view, an action on such stipulation can be sustained. By this principle I proceed to test the agreement in question.
Nothing can be more, clear upon the face of this instrument than that the parties meant to give to the plaintiff a distinct right of action for his per .diem allowance and expenses, from time to time. An action could have been sustained for a demand of this nature prior to the termina *130 tion of the suits in which the defendants were engaged. Successive actions could have been sustained as a further allowance became due, and further expenses were incurred. This obligation, then, was distinct, independent, and unconnected with that which rested upon the successful termination of the suits. This obligation was valid, and a Court would be bound to give it effect. It is separated in the mere point of position in the document from the other undertakings of the defendants. It is separable in its nature and subject matter. It is capable of being taken as a distinct engagement, without affecting the other engagements of the defendants, and without it being necessary, to consider such engagements, to judge of this.
Thus far there seems little difficulty in the case.
It is also true, that there is to be found a lawful consid-' eration for this lawful engagement, in the undertaking of Poliak “ to hold himself at all times in readiness to give his testimony, or to impart his information as above, as an expert in such matters.”
But, to sustain this view, we must discard the apparent meaning of the words “ as above,” and not refer them to the giving of such testimony as shall produce success. And if this were permissible, we have yet to say, that the unlawful undertaking to testify did not combine with the lawful consideration in leading to this promise of the defendants. I think this cannot be said. On the contrary the result of my reflection is, that the defendants "would not have engaged to pay the per diem allowance and expenses, if this undertaking to testify had not been in the contract. The fidelity to the promise so to testify, as well as the readiness to give the information possessed, and render the services, previous to trial, were bargained for and secured by this allowance, as much as the $2,000 was bargained for upon success attending the testimony. I cannot but conclude, that the illegal consideration not only did concur to induce this promise, but really was the predominating motive for making it.
The judgment must, therefore, be affirmed.
*131 Robertson, J.
On the face of the instrument in suit it would seem that the main object of the defendants was thereby to secure the benefit of the information acquired by the plaintiff. The recital is confined to it, the first condition of the defendants’ liability is its communication to them, and plaintiff covenants to impart it. The obligation of giving testimony or aid as a scientific expert holds a secondary position, and inasmuch as the defendants were ignorant of the nature of the information, would appear to be inserted only for greater caution, in case it became necessary. By extrinsic evidence only we discover that, while the information consisted of knowledge of the existence of a patent prior to that claimed in the litigation recited to be then pending, the testimony of the plaintiff to establish .the accuracy of the copy of the patent and specifications might be found useful; such testimony, however, although useful, does not appear to have been indispensable, for, in case of the plaintiff’s death, absence or refusal to testify, another witness might have proved the same thing. The main point was to learn the existence of such a patent and where to find it. If that had been known to the defendants, they would certainly not have agreed to pay anything like $3,000 for the testimony, and probably not more than the per diem allowance and traveling expenses. These preliminary remarks are rendered necessary by the great stress laid on the fact that one of the conditions of the defendants’ liability was giving testimony by the plaintiff, and its treatment as the predominant purpose of the instrument, and as indispensable to enable the defendants to accomplish the object they had in view in making the agreement.
‘ The giving of testimony by the plaintiff is not, by the terms of the instrument, a necessary condition of the defendant’s liability; he might even die before it could be given, and yet his representatives could recover if the necessary information was given; it is but one of the conditions on which the defendants would be liable; the alternative one is imparting information already acquired *132 Tby the plaintiff, provided it he such as to lead to a successful issue in the pending litigation. The independent covenant of the plaintiff, merely to hold himself in readiness to give testimony generally, might expose him to a recoupment in damages, but would not by implication render such testifying a condition precedent to the right to recover; because the parties, having expressly declared what those conditions should be, that expression necessarily excludes any implication. Ho construction of the covenant could make it necessary for the plaintiff to give testimony as well as information, to entitle him to recover, if the latter be sufficient to assist the defendant in successfully defending himself against the pending claims; nay, even if the testimony given by the plaintiff was hostile to the interests of the defendants, he would still have the same right, provided they were successful and the information given by him contributed to such success. The compensation, therefore, was not for both united, but for either one, which formed the condition of the right to recover 5 and there is no room for inferring, in a case where th6 plaintiff could recover by simply establishing his communication of the efficacious information, without having given any testimony, that his becoming a witness constituted any part of the consideration for such liability. The only embarrassment in the .case arises from the fact, that apparently the same sum of money is to be paid in either event, whether the plaintiff only gives the desired information or testifies also; but this difficulty is easily solved, as it is only one of construction, for it will be found that although numerically the sum is the same, yet in legal character it becomes two sums in reference to the consideration; one being a compensation for giving valuable information, on which alone the right to such compensation depends,, and the other a compensation for giving testimony, on which alone the right to that compensation depends. There is no question that the parties in this case could have entered into two separate stipulations, by one of which the defendant should agree to pay *133 $3,000 for the desired information, and by the other the like sum for the desired testimony, and have provided that a recovery or payment upon either should be a satisfaction of the other liability. The covenant in question does no more, and is but a grammatical condensation of such stipulations ; the creation of an alternative by a disjunctive conjunction must operate entirely to separate, in meaning and effect, the two branches of the covenant. They become, in fact, two covenants, with a different consideration for each, entirely disjoined, both in the basis and proof of the covenantor’s liability, so that either might have been omitted, and left the other to stand upon its own merits. This is the natural interpretation of the clause in question; but, were it otherwise, the rule is well settled that any reasonable construction is to be adopted to prevent a contract from failing by reason of illegality. (Ld. Howden v. Simpson, 10 Ad. & El., 793; S. C., 37 Eng. Com. L., 249.)
It remains to be seen, therefore, only how far the introduction of an illegal stipulation, or consideration, in an instrument, or a clause of it, affects such instrument or clause. And upon this point the general rule is that the common law struggles to sustain every part of an instrument from which the illegality can be extracted; it is only a statute which makes the whole void by reason of the illegality of one of its parts. (Pigot's Case, 11 R., 26; Bank of Australasia v. Breillat, 6 E. F. Moore’s (P. C.) R., 152; Curtis v. Leavitt, 15 N. Y. R., 91.) Illegality, at common law, vitiates a contract only in two cases, to wit, where the act to be performed is illegal or the consideration is so. In Rose v. Truax, (21 Barb., 361,) the test is declared to be the inseparability of the legal from the illegal parts of the undertaking, or the indivisibility of the consideration; so that if one undertakes to do an illegal as well as a legal act for a legal consideration, or a legal act for a consideration partly legal and partly illegal, and there is no mode of determining in the first case how much of the consideration was for the act which was legal, and in the second
*134 case how much of the act was for the part of the consideration which was legal, that contract becomes invalid. Some cases do not even go as far as this: for in Bunn v. Guy, (1 Smith’s R., 11,) Lord Ellenborough held a bond to be good, if any' part of- the consideration was good, unless a statute interfered, and he reiterated the same view in Newman v. Newman, (4 Maule & Selw., 70.) The same doctrine was held by one of my brethren, when Assistant Vice Chancellor, (Jarvis v. Peck, 1 Hoffm. Ch. R., 479.) In the cases of Carleton v. Woods, (8 Foster, [N. H.,] 290,) Yundt v. Roberts, (5 Serg. & Rawle, 137,) and Frazier v. Thompson, (2 Watts & Serg., 235,) the contract was apportioned for the legal consideration, it being in the form of a promissory note. In Arkwright v. Cantrell, (7 Ad. & El., 565,) and Nicholls v. Stretton, (10 Q. Bench R., 346,) although the consideration was entire, the illegal act to be done was rejected and the rest left valid. In Deering v. Chapman, (9 Shepley, 488,) Woodruff v. Hinman, (11 Vt., 592,) and Burt v. Place, (6 Cow., 431,) the contract was declared void, because part of the consideration was in violation of a statute. It may be doubted, however, whether those last three cases are not contrary to the current of authority, and whether they do not confound the cases where a statute merely forbids an act, with those where it makes a whole instrument void which attempts to carry it out, whatever legal stipulations it may contain. In this case, however, the instrument itself separates the two parts of the contract, or rather makes two for two different considerations ; and, although it stipulates - only to be liable for but one payment, even if both acts constituting the different considerations be done, yet it also requires only one of those acts to be done to entitle the plaintiff to recover. It clearly stands the test furnished by Mr. Chitty to discover whether any part of a contract be illegal, to wit, that the plaintiff requires no aid from the illegal part to secure his right to the legal. (Chit. on Cont., 5th Am. ed., 657.) That test is also approved of in Gray v. Hook, (4 Comst., 449.) It is to be observed in this case, that the seal to the *135 instrument is sufficient consideration for the performance of the covenant by the defendant, and that the communication of the desired information, or giving the beneficial testimony, are made mere conditions. It is true that if the only condition were to give the required testimony, and that were illegal, the Court would have a right to presume the giving of such testimony to be the consideration of the covenant; but where there is another condition, on the performance of which alone the plaintiff is to become entitled to the same amount, and which is perfectly legal, it cannot be said that from the face of the instrument the Court have a right to presume that the consideration of the covenant was ah undertaking to give testimony beneficial to the defendants. It is to be recollected that it is a covenant of the’iatter, who are entirely ignorant of the nature of the plaintiff’s information, and whether his testimony would not or would be needful; and even if the plaintiff knew that the condition as to the testimony was illegal, and that he could not recover if that were the consideration, but that such testimony was not indispensable, he had a right to risk his right of compensation upon the other ground of the practical effect of his mere information. If there were an answer setting up an illegal contract dehors the instrument, and there was extrinsic evidence to prove it, of course the mere seal would prove no barrier in this case to such a defense; but there is no such defense, and no such proof, and the defendants rely on the legal interpretation of the instrument itself to make the covenant void. The plaintiff, therefore, derives no aid from the supposed illegal part of the instrument, according to its legal interpretation, in order to be entitled to compensation for giving his information; he is not bound by the conditions to give his testimony at all in order to receive that compensation, and were it not, in fact, that his affidavit is introduced, as the mode and evidence of his communicating the desired information, there would be nothing to show that he gave his testimony; at all events, it was not necessary for him to rely on it as testi *136 mony, even if it were so, which it probably was not within the meaning of the covenant, as it was not on a trial, although the result of the disclosure was to induce the defendants’ adversaries to abandon the litigation. Whether it came within the other description in the covenant, is another question. At all events, what has been said is sufficient to skov that the plaintiff’s right to recover on the face of this instrument, according to the legal force of its proper interpretation, requires no aid from his giving testimony.
I have referred to the separate covenant of the plaintiff, in the same instrument, “to hold himself in readiness to “give his testimony, on impart his information as above “as an expert,” as not furnishing by implication the consideration for the defendants’ covenant. But if it were the only place where we could look for a consideration standing by itself, it could not be construed to mean to give only favorable testimony; which would be his going out of the way to make the contract illegal. In fact, it is hardly a covenant to give testimony, which he could be compelled to do, but merely to be in a position to give it when called on. The words “ as above ” clearly refer only to the information, since the defendants, being declared to be ignorant what the information was, could hardly be understood to speak of the testimony as being that of an expert, although they might of the information. For any refusal of the plaintiff, under this covenant, both to testify and give information, he is only liable in damages; and it is clear that, even if the testimony he should give were prejudicial, the defendants could not recover at all, and that damages for not testifying, or being away when needed, would only be recoverable by way of recoupment against any sum due for giving information, by reason of being in the same instrument, and not by way of diminution of the value of the plaintiff’s services; but, in fact, this covenant is also in the alternative, so that the plaintiff escapes liability on it, if he does either of the two, the election being with him. The covenant to pay a per diem" allowance for attendance as an expert, cannot make a covenant merely to attend as *137 a witness illegal, dr change it by interpretation into one to give favorable testimony, however proper it might be (if the allowance were very large) as evidence to show, with other circumstances, an extrinsic illegal understanding.
It is not unnatural to assume that no part of an instrument containing many stipulations would have been signed unless the parties understood that all such stipulations could and would be carried out, and therefore, in one sense, every stipulation may be considered to be part of the consideration for every other one in such instrument ; but the law does not presume such to be the case, and it depends upon the relation of such stipulations to each other, as established in the instrument, or of the acts for which they undertake, whether they are to be construed as in law mutual considerations; and more particularly are they to be considered independent where one is illegal. The case of Nicholls v. Stretton, (ubi sup.,) goes farther than this, for, where the covenants were plainly considerations for each other, an illegal covenant was avoided and a legal one sustained, although the same consideration applied to both. In this case the tendency to look upon the instrument as one entire contract to make the plaintiff as available as possible as an expert and witness, is still further sustained by the extrinsic evidence that the testimony of the plaintiff was so useful, not to say indispensable, to the making of his information available, but that tendency must yield to the legal interpretation of each part of the instrument, and the duties it imposed and right it gave.
It seems to me that every point that could be legally strained so as to exclude so ungracious a defense as this, should be invoked for the purpose. The plaintiff, at great labor and expense, procured the valuable information, and the defendants agreed to pay $3,000 for it, if it accomplished a certain end, and after it has done so, they now seek to set up a technical illegality to defeat the plaintiff’s action, if the disclosure of such information, being legal, can be brought within any of the rules applicable to work done or goods sold, so as to make the defendants liable for its *138 value. I think the covenant in this case ought to he admitted to be the measure of that value, as in other cases. •
I have assumed throughout that the consideration of giving testimony favorable to the defendants was illegal, but I do not wish to be understood as meaning to express any opinion on that point. The case of Yeatmcm v. Dempsey, (7 J. Scott R., [N. S.,] 628,) is very strong •against it. It would seem very illogical or unjust in that case to have allowed the plaintiff to have recovered substantial damages, unless the absence of the testimony of the defendant was proved to have been positively injurious : the action being on the contract to perform the specified services for the price therein mentioned, and not as any general duty, it would seem to sanction his right to recover for such services in proportion jp their benefit to the plaintiff. Assuming that such contracts lead to perjury, I have never been able to appreciate the distinction made in favor of a witness interested in the conviction of an offender criminally, that he is entitled.to the reward from motives of public policy; that might lead to depriving him of the reward, because no man should be allowed to disqualify himself from being a witness; but, if such contracts are illegal in a private suit, because it leads to perjury,.how much more dangerous to place the life and liberty of an accused man at its mercy. I have also not deemed it necessary to defend the covenant to pay a certain price for information leading to success in a lawsuit from the objection of illegality. Stanley v. Jones, (7 Bing. R., 369,) proceeded solely on the ground that the agreement sued on was champertous; that difficulty is removed by the Revised Statutes, (Sedgwick v. Stanton, 14 N. Y. R., 289;) any views casually thrown out in that ease seem to be overruled in Yeatman v. Dempsey, (ubi sup.,) where the plaintiff was allowed to recover substantial damages, upon an agreement to attend on a trial and give information collected to qualify the defendant to become a witness. The contract in the case before us *139 was free from such vice, because it was to pay the price of information already collected, when communicated.
I have already stated that I do not read the covenant of the plaintiff in the instrument in suit as agreeing to give testimony to enable the defendants to succeed, being merely “to hold himself in readiness,” which is not to embarrass himself by anything which could prevent him, and to be near at hand in case of need. I also have not been able to find in the covenant to pay the plaintiff his traveling expenses and a daily compensation for his services as a scientific expert, anything said as to testimony or his being a witness, and unless the whole instrument is so redolent of nothing but a design to induce the plaintiff to warp his testimony in the defendants’ favor as to taint every part of it, I should be inclined to think the plaintiff could recover upon that covenant, even without being a witness, particularly as the payments are to be made from time to time in the progress of the cause, and he could not be perpetually a witness. I have already stated my views of the whole instrument; they are sucli as to let the covenant last mentioned stand upon its own merits, which I do not perceive to be affected by any illegal purpose.
The evidence on the trial was sufficient to have gone to the Jury under proper instructions, of the identity of the information communicated by the plaintiff with that recited in the agreement, of the termination of the litigation of the defendants satisfactory to their interests, and of the tendency and agency of such information in bringing about such a result. I think, therefore, the complaint was improperly dismissed, and there ought to be a new trial with costs to abide the event.
Judgment affirmed.