(55 Misc. Rep. 346)

## CENTRAL NEW YORK TELEPHONE & TELEGRAPH CO. v. AVERILL et al.

(Supreme Court, Special Term, Onondaga County. July 13, 1907.)

CONTRACTS—LEGALITY—TELEPHONES—CONTRACT FOR EXCLUSIVE SERVICE— VALIDITY—INJURY TO PUBLIC.

Plaintiff, a public telephone and telegraph company, contracted with defendants, who were the proprietors of a hotel, to install a telephone exchange throughout the hotel; defendants agreeing to furnish certain space and accommodation, pay a certain compensation, and give plaintiff the exclusive right to place telephones in the hotel. *Held*, that so much of the contract as purported to give plaintiff such exclusive right was injurious to the public, and therefore unenforceable.

Suit by the Central New York Telephone & Telegraph Company against Charles S. Averill and another. On motion to vacate an injunction pendente lite. Granted.

Hiscock, Doheny, Williams & Cowie, for the motion.

Goodelle, Nottingham Brothers & Andrews, and F. G. Fincke, opposed.

ANDREWS, J. The plaintiff is a corporation organized under the laws of this state, maintaining and operating a telephonic system throughout central New York. The defendants are the proprietors of the Yates Hotel in the city of Syracuse. On August 18, 1902, the plaintiff entered into a written contract with the defendants by which it agreed to install a telephone exchange throughout the de-

fendants' hotel, connected with the plaintiff's lines, with its appropriate switchboards, wires, and tubing. In consideration of this agreement the defendants were to furnish certain space and accommodation for the booths and appliances of the plaintiff, were to pay a certain compensation, and were to give the plaintiff the exclusive right to place telephones in the hotel. The defendants now threaten to violate this contract by removing plaintiff's system and by installing therein the system of a rival corporation. To prevent this an action was brought and a temporary injunction was obtained. It is now sought to vacate this injunction, so far as it prevents the installation of this second system.

The question as to whether the defendants had, by the terms of the contract, the right to end it upon giving 30 days' notice was decided adversely to them on the argument and will not be discussed here. There remains the question as to whether the contract, so far as its exclusive features are concerned, is void as against public policy and in restraint of trade. Upon this question briefs were handed to the court in July, 1906, and in that month a decision was rendered holding that the contract was valid. This decision was based upon the case of Lough v. Outerbridge, 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674, 42 Am. St. Rep. 712. The court said that it was impossible to distinguish the case cited from the one at bar, and that, therefore, this court was bound by the decision of the Court of Appeals. Before an order was entered, and in the fall of 1906, a motion was made by the defendants' attorney for a reargument of the questions involved. That motion was granted, and additional briefs were submitted. Since the reargument this matter has been delayed by the suggestion that some arrangement might be made between the plaintiff and the telephone company, whose instruments the defendants seek to substitute, and that, therefore, a decision was unnecessary. The court, however, has lately been informed that such an arrangement is not likely to be made, and that, therefore, this motion must be decided.

The first question to be determined is whether, as the court held upon the original argument, the case of Lough v. Outerbridge is controlling upon this matter; and this depends upon the precise theory upon which contracts in restraint of trade are held to be void. Originally all contracts restraining trade wholly or partially were void. This was put upon the ground, first, of injury to the public in being deprived of the restricted party's industry; and, second, of injury to the party himself. But the original rule has been greatly modified. "The latest decisions of courts in this country and in England show a strong tendency to very greatly circumscribe and narrow the doctrine of avoiding contracts in restraint of trade. The courts do not go to the length of saying that contracts which they now would say are in restraint of trade are nevertheless valid contracts and to be enforced They do, however, now hold many contracts not open to the objection that they are in restraint of trade which a few years back would have been avoided on that sole ground, both here and in England." Matthews v. A. P. S. N. Y. et. al., 136 N. Y. 333, 32 N. E. 981, 32 Am. St. Rep. 741.

In this state it has been repeatedly held that contracts which partially restrain trade are not objectionable, so long as the restrictions are only such as to afford a fair protection to the party in favor of whom they are given, and are not so large as to interfere with the public interests. In Oakes v. C. W. Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544, for instance, Judge O'Brien says that a contract between a corporation organized to supply a village with water and an individual that he would not carry on that business or organize a corporation for that purpose, or ask or receive a franchise from the town authorities therefor, was valid. Assuming that both plaintiff and defendant intended to apply for franchises, and that the latter persuaded the former to abandon this purpose, there was nothing immoral or that threatened the public interests or the public good. If the business of a private corporation is threatened with competition, it is not illegal or immoral to persuade a competitor to desist in the enterprise in which they both cannot succeed. In short, in all such contracts, the public welfare is the first matter to be considered; and if it is not involved, and the restraint imposed is reasonable, the contract is sustained. Nor are those rules which say that a given restraint is against public policy to be arbitrarily extended, so as to interfere with freedom of contract. It is only where such provisions threaten the public good in a distinctly appreciable manner that they should be held void. The contract must in some tangible form threaten the public welfare before the courts should interfere. Diamond Match Company v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456.

This being the rule, I think it is quite clear that if the plaintiff was an individual, or merely a private corporation, engaged in a private business, the contract could not be questioned. A butcher, for instance, could contract with his customers to supply them with meat at a reduced rate in return for their agreement to patronize him exclusively. The plaintiff, however, is a public corporation. It is at least a quasi common carrier, and the public nature and duties of such corporations need to be rather emphasized than restricted. It is intrusted by the state with the power of eminent domain, and is given the right to construct its lines over the public highways. In return for the powers intrusted to it and the rights conferred upon it, on the theory that the public welfare would be thereby promoted, it owes in return certain public duties beyond and above those owed by others. It is bound, for example, to treat the public without favor or favoritism. It may not refuse its services to one who offers the same terms as are accepted from another. It may not impose unreasonable terms or charge an extortionate price for the service it renders. But may a contract made by such a corporation, which involves the rendition of services, contain a provision, founded upon an adequate consideration, that the patron will not patronize any rival corporation?

The question in Lough v. Outerbridge was very similar. There the defendants were common carriers running a line of steamships to Barbadoes. They charged 40 cents a barrel for freight, which was a reasonable rate for the services rendered, just as, so far as appears in the case at bar, the plaintiff is charging a reasonable rate for the

rent of its telephones. There was a steamer belonging to another company, named "El Callao," trading between New York and South America. As it passed near Barbadoes, its owners conceived the design of filling any unoccupied portions of their ship with freight for that point, and stopping there on its way south to make delivery. To prevent this competition the defendants made a general offer that on the weeks when El Callao sailed from New York they would receive and transmit freight to Barbadoes for 25 cents a barrel, on condition that the person so shipping by them would not ship anything upon El Callao. Upon one occasion while this condition of affairs existed the plaintiff offered to the defendants a shipment upon their vessel at the 25-cent rate. He was answered that they would receive it if he would make such a contract as their offer had contemplated, namely, that he would not ship anything upon El Callao. This he refused, and the shipment was not accepted. Thereupon he sued the defendants, claiming that the restriction imposed upon the offer was unreasonable and improper, and that he could compel the defendants to accept his shipment for 25 cents without the objectionable condition being annexed. The Court of Appeals held he could not. It said:

"While the common-carrier is bound to convey and deliver goods for a reasonable compensation, and may not, where the circumstances and conditions are the same, unreasonably or unjustly discriminate in favor of one against another, it may make a discount from its reasonable general rates in favor of a particular customer or class of customers in isolated cases for special reasons and upon special conditions."

And it said, further, that one of the special reasons which authorized such a discount was a promise by the customer to give to the carrier all its business. The Quebec Steamship Company was a public corporation, a common carrier, and had subjected its property to the public use; but, in the absence of legislation prohibiting it, the condition was held to be good. The plaintiff is no more a common carrier, no more a public corporation, has no more subjected its property to public use, than had the Quebec Steamship Company. Equally there is no legislation affecting its right to make such a contract.

The claim was made, however, that a distinction could be drawn between the two corporations, in that one has the right of eminent domain, and the other has not. I do not think that any distinction can be based solely upon that ground. I cannot believe that Mr. Pingrey is right in his statement that the rule that reasonable contracts in partial restraint of trade are valid does not apply to corporations engaged in a public business in which the public are interested, or with the court in West Virginia, where it holds that, whenever a Legislature had authorized any corporation to condemn the lands of others in order to carry on its business, the courts will regard this as a legislative declaration that it is against the public policy to permit any restriction whatever of such business by private contract. West Virginia Transportation Company v. Ohio R. P. L. Co., 22 W. Va. 617, 46 Am. Rep. 527.

And yet I think I was wrong in holding that this case is controlled by Lough v. Outerbridge. Certain things are perfectly clear. No

corporation, public or private, may disable itself from performing those functions conferred upon it by its charter. This was granted in contemplation of the supposed benefit to the public and for the public good. Due performance of these functions was the consideration of the grant, and any contract which disables it from performing it violates its implied agreement with the state and is void as against public policy. Further, as the Supreme Court of the United States says, innumerable cases may be cited to sustain the proposition that combinations among those engaged in business impressed with a public or quasi public character, which are manifestly prejudicial to the public interest, cannot be upheld. It follows that:

"If there be any sort of business which, from its peculiar character, can be restrained to no extent whatever without prejudice to the public interest, then the courts would be compelled to hold void any contract imposing any restraint, however partial, on this peculiar business." West Virginia T. Co. v. Ohio R. P. L. Co., 22 W. Va. 617, 46 Am. Rep. 527.

But all this is not because the corporation is a public one, or a common carrier, or because it possesses the rights of eminent domain, but because of the rule that, where a contract is alleged to be in restraint of trade, the public welfare is to be first considered, and, if it be found involved, the contract is to be declared void. This rule does not apply to any one class of corporations or any one class of individuals. It applies to all. And, while it may very well be that a semipublic corporation may be unable to make contracts that would be perfectly valid if made by an individual or by a private corporation, the reason is, not that certain powers are conferred upon the former, but because by the very nature of its operations public interests are more likely to be affected. U. S. v. Freight Association, 166 U. S. 290–373, 17 Sup. Ct. 540, 41 L. Ed. 1007. Just so long as the public is not injured, however, any fair and reasonable contract of such a character is perfectly valid. Each case that arises must be decided upon its own merits and upon the particular circumstances developed. This being so, Lough v. Outerbridge cannot be deemed a controlling authority where the question arises with regard to corporations engaged in a different kind of business under different circumstances. A contract made by such a corporation must be examined upon its own merits, and a determination must be reached whether by that particular contract the public will be injured and trade unduly restrained; and as a guide to this decision a discussion of what the courts have done in cases more or less similar should be of advantage.

Lough v. Outerbridge has already been mentioned. In that case the Court of Appeals has held that a contract intended to prevent competition in an ocean-carrying trade between New York and Barbadoes did not cause such public injury as to be in restraint of trade, so long as the rates offered by the defendant were reasonable. A very similar decision was reached in Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456, where a contract providing for the discontinuance of a competing line of steamers between New York and Savannah was held to be valid. In Illinois an attempt of a railroad company to grant to a telegraph company the exclusive right of way over its lands was held to be void as imposing an unreasonable restraint in trade.

St. L. & C. R. R. Co. v. Postal Tel. Co., 173 Ill. 508–538, 51 N. E. 382. The same proposition has been held in Georgia (W. U. Tel. Co. v. American U. Tel. Co., 65 Ga. 160, 38 Am. Rep. 781), in New Mexico (Union Trust Company of New York v. A. T. & S. R. R. Co., 43 Pac. 701), and in the federal courts (W. U. Tel. Co. v. B. & S. Ry. Co. [C. C.] 11 Fed. 1; W. U. Tel. Co. v. B. & O. Tel. Co. [C. C.] 19 Fed. 660), although in the two cases last cited the decision rested in part upon a statute of the United States which authorizes telegraph companies to operate lines over and along any military or post roads. In West Virginia T. Co. v. Ohio R. P. L. Co., 22 W. Va. 600, 46 Am. Rep. 527, it was held that a contract whereby a landowner for a valuable consideration granted to a pipe line company the exclusive right to construct its lines over his land was, so far as the exclusive feature was concerned, void as contrary to public policy and as being an attempt to impose an unreasonable restraint upon trade. In Gibbs v. Consolidated Gas Company of Baltimore, 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979, a contract which provided for the practical combination of two gas companies was held void, and there was some discussion as to contracts in restraint of trade. But in that particular case the combination was expressly prohibited by statute. In Chicago Gaslight Company v. People's Gaslight Company, 121 Ill. 530, 13 N. E. 169, 2 Am. St. Rep. 124, a company was chartered to supply the city of Chicago with gas. It made a contract with a second company not to sell gas in certain wards. The court held that this contract tended to create a monopoly, and was in restraint of trade, and was, therefore, void. But in this case, also, the Legislature had showed an intent to prevent a monopoly. In Bald Eagle Valley R. Co. v. Nittany Valley R. Co., 171 Pa. 284, 33 Atl. 239, 29 L. R. A. 423, 50 Am. St. Rep. 807, the Supreme Court of Pennsylvania held valid a contract by which a coal company agreed for a consideration to give all its business to a railroad corporation.

Such guidance as may be obtained from the reported cases must be had from these decisions. They do little more, however, than enforce the doctrine that contracts in restraint of trade by which the public are injured are void, whether made by a corporation, public or private, possessed or not possessed of the rights of eminent domain, and that, under the circumstances of those particular cases the public was or was not injured. That, therefore, is the question to be decided in the case at bar: Is the agreement shutting out a competing telephone company from the Yates Hotel injurious to the public? On the whole I think that it is. The matter is one where much can be said upon both sides. No conclusive reasons can be given. Its decision will depend more upon the prepossessions of the court before whom it comes, more upon its theories of politics and philosophy, than upon arguments. In Pennsylvania, if we are to judge by Bald Eagle Valley R. Co. v. Nittany Valley R. Company, cited above, such an agreement would be sustained. In West Virginia it would be held void. But the general tendency seems to be to encourage competition —to believe that on the whole the public welfare is promoted by its extension and injured by its restraint.

Telephonic communication has become a necessity in commerce and

business, and, while there are disadvantages in two systems in one territory, a monopoly of such a common necessity, with the lessened incentive to good service and the best equipment which follows, is a greater evil. And yet, if this contract is valid, if the plaintiff may take the further step of agreeing with all its patrons for an adequate consideration to use its instruments exclusively, a telephone corporation already occupying the ground may easily put itself beyond the reach of competition. True, it may be said, as in Lough v. Outerbridge, that so long as its prices are reasonable no objection can be made. This may be so with regard to such a business as the ocean transportation of freight. But it does not hold with regard to a business that enters so intimately into the daily life of the people. Price is not the controlling factor. Prompt, efficient, and courteous service; the best available materials and instruments; the adoption of the latest devices—all are equally as important. And to secure these desiderata actual competition or the threat of competition is the most effective means. It is not true, as is said in the Pennsylvania case, that no one outside of the contracting parties are affected by the shipper's selection of a route, if by contract he is limited to this route. Every contract, the direct effect of which is to seriously limit competition between railroads or telegraphs or telephones, affects the public at large.

I have, therefore, come to the conclusion that the particular clause of the contract which has been discussed is void. As the defendant only asks that the injunction herein be vacated so far as it restrains the defendants from installing other telephones than these of the plaintiff, the question whether this contract is so divisible that the other clauses thereof may be upheld need not be decided. W. U. Tel. Co. v. B. & S. Ry. Co. (C. C.) 11 Fed. 1; Matthews on Restraint of Trade, p. 173.

The motion herein is granted, with $10 costs.