(58 Misc. Rep. 59.)

CENTRAL NEW YORK TELEPHONE & TELEGRAPH CO. v. AVERILL et al.

(Supreme Court, Special Term, Onondaga County.   February, 1908.)

1. CONTRACTS—SEVERABLE AGREEMENTS.

Whether the agreements in a contract are severable depends on whether the parties have apportioned the consideration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 754–757.]

2. SAME—ENTIRE CONTRACTS.

Where the failure of a part of the consideration would defeat material objects of a contract and would have affected it had such failure been anticipated, the contract is entire.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 754–757.]

3. SAME—VALIDITY—PUBLIC POLICY—PARTIAL ILLEGALITY.

Defendants, under an agreement of plaintiff to install a telephone exchange throughout defendants' hotel, agreed to furnish such accommodation for the appliances, paid a certain consideration, and gave plaintiff the exclusive right to place telephones in the hotel. Held an entire contract as the agreement cannot be apportioned, and, being invalid as against public policy because of its exclusive features, in that it gave plaintiff the right to maintain an exchange at defendants' expense, the whole contract falls.

110 N.Y.S.—18

4. SAME.

A recovery based purely upon an illegal contract, where the contract is necessarily a part of plaintiff's case, cannot be had.

Action by the Central New York Telephone & Telegraph Company against Charles S. Averill and G. Fred Gregory. Application for injunction denied.

See 55 Misc. Rep. 346, 105 N. Y. Supp. 378.

Goodelle, Nottingham Brothers & Andrews, for plaintiff.
Hiscock, Doheny, Williams & Cowie, for defendants.

ANDREWS, J. The plaintiff is a corporation organized under the laws of the state maintaining and operating a telephonic system throughout Central New York. The defendants are proprietors of the Yates Hotel in the city of Syracuse. On August 9, 1902, the plaintiff entered into a written contract with the defendants, by which it agreed to install a private telephone exchange throughout the defendants' hotel connected with the plaintiff's lines, with the appropriate switchboards, wires, and tubing. In consideration of this agreement the defendants were to furnish certain space and accommodation for the booths and appliances of the plaintiff, were to pay a certain compensation, and were to give the plaintiff the exclusive right to place telephones in the hotel. The contract was to continue in force for nine years from September 9, 1902, and thereafter until terminated by 30 days' notice in writing. It was further stated that the agreement was made subject to the terms and conditions contained in the 'ordinary subscriber's contract of the company, a copy of which was annexed to and made a part thereof. This so-called "ordinary subscriber's contract" was a printed form which contained, among other things, the following:

"Either party may terminate this contract at or after the expiration of the first year by not less than thirty days' previous notice in writing to the other party."

The hotel exchange provided for was completed by the plaintiff. No dispute appears to have arisen between the parties as to the force and effect of the agreement until April 12, 1906. At that time a notice in writing was served by the defendants upon the plaintiff, notifying the latter that, in pursuance of the terms of the agreement, the defendants "have decided to terminate said contract and that the same will be no longer in force or binding between the parties thereto after the expiration of thirty days from the service of this notice." This action was thereupon commenced. The complaint sets up the facts above referred to, and alleges that the defendants, in violation of the contract, threaten and intend to place in the Yates Hotel telephone instruments, wires, and apparatus belonging to persons other than the plaintiff, and to connect them with a system other than that of the plaintiff, and to discontinue and abandon the use of the plaintiff's private exchange, and to compel or induce their patrons and guests to abandon the use of the same, and to injure and interfere with such exchange of the plaintiff. Thereupon it asks relief that the defendants be enjoined and restrained, until September 9, 1911,

from removing, injuring, or interfering with the plaintiff's exchange in said Yates Hotel; from requiring, inducing, or procuring the patrons of the hotel not to use said exchange, and from installing, operating, and using in said hotel any instruments, wires, or apparatus, or any private exchange other than that owned and operated by the plaintiff. The defendants by their answer and upon the trial admit the allegations above set forth, but claim (1) that they have the right to terminate the contract by giving the 30 days' notice above referred to; (2) that the contract is illegal and void as being in restraint of trade and against public policy; and (3) that the plaintiff has an adequate remedy at law, and, therefore, may not maintain this action.

The question as to whether the defendants have, by the terms of the contract, the right to end it upon giving 30 days' notice was decided adversely to them on the argument, and will not be again discussed. A temporary injunction was granted herein whereby the defendants were restrained from permitting to be installed in the hotel any exchange other than that maintained and operated by the plaintiff; and from removing, injuring, or interfering with the plaintiff's wires, instruments, apparatus, or private exchange, and from severing the same from plaintiff's general exchange and telephone system. Upon a motion to vacate, such injunction in so far as it prevented the defendants from installing telephones other than those of the plaintiff, it was held, impliedly, that the latter had no adequate remedy at law, and that question also will not be again discussed. It was further held that the contract, in so far as it gave to the plaintiff the exclusive right to establish an exchange in the Yates Hotel, was void as against public policy. The reasons for such a result are stated at length in the opinion then handed down, and need not be repeated here. See 55 Misc. Rep. 346, 105 N. Y. Supp. 378.

The only question remaining, therefore, is whether or not the contract, in so far as it gives the plaintiff the right to maintain and operate an exchange in connection with its outside wires, and in so far as it requires the defendants to pay therefor, is valid; or whether, because of the void exclusive features contained therein, the whole agreement must fall. The principle upon which the decision of such questions depends is well understood, although the courts may not always agree upon its correct application in particular cases. To be enforceable, contracts, where the promise of one party is the consideration for the promise of the other, must be mutually binding. If A. may enforce a contract against B., B. may enforce it against A. If either cannot enforce it, neither can do so. So it makes no difference if the illegal covenants in a contract are all made by one party. The other party may not waive them if they so affect the essence of the agreement that it could not be enforced against the party making them. The fact that certain of the promises contained in a contract are illegal may or may not render the entire contract void. The test is this: If A. makes a promise to B. consisting of two or more covenants upon a legal consideration, and one of these covenants is illegal and the other legal, the question as to whether the legal covenant can be enforced depends upon whether the contract is severable or not. If the contract is severable, consisting in legal effect of dis-

tinct contracts, the legal covenant can be enforced. Otherwise not. So, if any part of the consideration is illegal, if it is entire and indivisible, all the promises based thereon are unenforceable, even though the residue of such consideration is legal. If, however, it is divisible, if part applies to one promise and part to another, then those promises which rest on the legal portion of the consideration are good. Page, Cont. § 509. Whether the promises in a contract are severable depends largely upon whether the parties have apportioned the consideration on the one side to the different covenants on the other. If the consideration is apportioned so that for each covenant there is a corresponding consideration, the contract is severable. Where, on the other hand, the failure of a part would defeat material objects of a contract, and would have affected it had such failure been anticipated, the contract is entire. If one undertakes to do a legal act for a consideration partly legal and partly illegal, and there is no mode of deciding how much of the act was induced by the part of the consideration which was legal, that contract becomes invalid. Rose v. Truax, 21 Barb. 361. If a legal undertaking is severed, or fairly severable and distinct; if the legal consideration is also severed or severable; if, without dealing arbitrarily with the language of the contract, we can conclude that the lawful motive influenced the lawful stipulation without being compelled to find that the unlawful one necessarily combined in producing it—then, in my view, an action on such a stipulation can be sustained. Pollak v. Gregory, 9 Bosw. 116. "As a general rule, where a promise is made for one entire consideration, a part of which is fraudulent, immoral, and unlawful, and there has been no apportionment made or means of apportionment furnished by the parties themselves, it is well settled that no action will lie on the promise. If the bad part of the consideration is not severable from the good the whole promise falls." Bishop v. Palmer, 146 Mass. 469, 16 N. E. 299, 4 Am. St. Rep. 339. See, also, 9 Cyc. 569. Whether the covenants or the consideration are separable or divisible is a question of interpretation for the courts. 9 Cyc. 566. In the case at bar there can be little doubt upon this question. The plaintiff is to install its plant and perform certain services. In return the defendants. are to pay certain sums from time to time, to furnish certain space, and to grant the exclusive right before referred to. The agreements. on both sides are not apportioned. They cannot be. From the very nature of the contract the exclusive right must have been an important consideration, but how important no one can tell. It is impossible to say that the plaintiff would have made the contract at all but for this provision. It is not to be separated from the other agreements undertaken by the defendants. Board v. State, 66 Kan. 634, 72 Pac. 284; Bishop v. Palmer, 146 Mass. 469, 16 N. E. 299, 4 Am. St. Rep. 339; Pollak v. Gregory, 9 Bosw. (N. Y.) 116; Saratoga County Bank v. King, 44 N. Y. 87; Arnot v. Pittston & Elmira Coal Co., 68 N. Y. 558, 23 Am. Rep. 190. Not only, however, is this the only conclusion that can fairly be drawn from words used in the contract. The parties themselves agree that such is its meaning.

In the complaint it is stated that the plaintiff was induced to incur the expense of installing the private exchange by reason of the length.

of time the contract was to run and the exclusive telephone privileges of the hotel given by it; and, further, that it would not have installed such exchange or incurred the expense of so doing if it had understood that the contract might be terminated in a shorter time, or that the telephone privilege given by it was not exclusive. And, as is said in the brief submitted on behalf of the plaintiff, "by securing its incorporation" (the incorporation of this exclusive clause) "in the contract they" (the defendants) induced plaintiff to furnish them with telephone service of an unusual kind at a lower rate of compensation than they would otherwise have furnished it. Defendants induced plaintiff to fix its price on the basis of their using no other telephone in their hotel. This contract was made upon actual competition, or in view of anticipated competition. The situation is the same as it would be if defendants had gone to plaintiff, and said: "We want a certain telephone service. Another company is offering it for a certain price. We only want one service, and will use only your telephone if you offer better terms than your competitor. What will you furnish the service for on that condition?" Thereupon plaintiff makes the lowest and most advantageous price, which defendants accept. Is it possible that defendants can secure a telephone service under those circumstances and afterwards repudiate the contract and refuse to pay for it? "No material benefit resulted to plaintiff from this exclusive clause of the contract. Defendants were the sole beneficiaries of this clause of the contract which enabled them to secure this service at a less pecuniary compensation than they would otherwise have been required to pay."

I am aware that a number of cases exist which are supposed to be in conflict with such a decision. One class are cases dealing with contracts in restraint of trade, of which Fishell v. Gray, 60 N. J. Law, 5, 37 Atl. 606, Rosenbaum v. U. S. Credit System Company, 65 N. J. Law, 255, 48 Atl. 237, 53 L. R. A. 449, Trenton Potteries Company v. Oliphant, 58 N. J. Eq. 507, 43 Atl. 723, 46 L. R. A. 255, 78 Am. St. Rep. 612, and Green v. Price, 16 M. & W. 346, are examples. It is sometimes attempted to distinguish such cases from those like the present where the vice of the contract is that it tends to create a monopoly, and perhaps such a distinction may properly be drawn. Page on Contracts, § 373, for instance, says, that contracts whereby one or both of the parties thereto are restrained from engaging in a business, trade or profession are of two kinds: (a) Those which are a part of a transaction, involving the good will of a business, which are designed to protect such good will and to that end to restrain some person or persons from engaging in business; and (b) those which have for their primary object not the protection of good will, but the formation of a monopoly in a given business. The first class, if objectionable at all, is so because the restraint is unreasonable. The second class is always illegal. The present attitude of the law is that contracts which do not aim to stifle competition, but merely to transfer a business and good will from one person to another, are very different in their effect from those which aim to stifle competition and to build up a monopoly. So in Rosen-

baum v. U. S. Credit System Company, cited above, the court says that "contracts in restraint of trade are loosely spoken of in the books as illegal contracts. It is more accurate to style them unenforceable contracts." And similar statements have been made in the English cases. Yet, as is said by Judge Allen in Bishop v. Palmer, 146 Mass. 469, 16 N. E. 299, 4 Am. St. Rep. 339, where the general doctrine was stated that, if the bad part of the consideration is not severable from the good, the whole promise falls:

"It is urged that this rule does not apply to a stipulation of this character, which violates no penal statute, which contains nothing malum in se, and which is simply a promise not enforceable at law. But a contract in restraint of trade is held to be void because it tends to the prejudice of the public. It is therefore deemed by the law to be not merely an unsufficient or invalid consideration, but a vicious one. Being so, it rests on the same ground as if such contracts were forbidden by positive statute. They are forbidden by the common law, and are held to be illegal."

Again, in certain cases, ordinary contracts in restraint of trade, with regard to this question of divisibility, seem to be treated as in a class by themselves. In Oregon Steam Navigation Company v. Winsor, 20 Wall. 64, 22 L. Ed. 315, for example, the Supreme Court cites with approval the statement of Chitty "that agreements in restraint of trade, whether under seal or not, are divisible; and accordingly it has been held that, when such an·agreement contains a stipulation which is capable of being construed divisibly, and one part thereof is void as being in restraint of trade and the other is not, the court will give effect to the latter and will not hold the agreement to be void altogether." It is possible, however, to base a valid distinction between the two classes of cases upon another ground. As has been said, the best test as to whether the covenants or consideration of a contract are divisible or not is whether the parties have apportioned the considertion on the one side .to the different covenants on the other. If the consideration is apportioned so that to each covenant there is a corresponding consideration, the contract is severable. A contract in restraint of trade is valid in so far as it is reasonably necessary for the protection of the party for whose benefit it is made. When it is not necessary for that protection, it is not enforceable. If, therefore, A. covenants to transfer his business and good will to B. and not engage in the same in the countries of England, Holland, and France in return for covenants made by B., and the restriction as to Holland and France is not necessary for B.'s protection, to that extent the restriction will not be enforced. In such a case the courts will hold that the covenant on A.'s part is severable. The rejected portions being unnecessary to B.'s protection—being of no benefit to him—it is to be presumed that his agreement was made in view of the other covenants upon the part of A. The agreement as to Holland and France is, as it is called in Rosenbaum v. U. S. Credit System Company, a collateral agreement; and it may be stricken from the contract without impairing its substantial effect.

If, however, the restriction was general, against doing business in any place, then the court would not strike this provision from the contract and enforce the remainder. Baker v. Hedgecock, 39 Ch. Div.

520. If, for instance, A. agreed to transfer his business and good will to B., also the real estate and personal property connected therewith, and never to engage in the like business at any place, the last covenant could not be eliminated and the rest of the contract sustained. The reason is obvious. Included in this illegal covenant is something for the real benefit of the other party. Where the good will of a business is sold, no one doubts that the buyer is advantaged if he can prevent the immediate competition of the seller. Therefore, while this covenant would in part be immaterial, in part it must be supposed to have influenced the buyer as to the price he agrees to give, or even as to making the purchase at all.

Precisely the same line of reasoning can be used to explain the decision in King v. King, 63 Ohio St. 363, 59 N. E. 111, 52 L. R. A. 157, 81 Am. St. Rep. 635, where the contract was that A. agreed to live with and take care of B. during his life, and not to marry during such service, in consideration of the agreement of B. that he would provide for her. The agreement not to marry was held to be void and to be severable from the rest of the contract. But Judge Spear in his opinion seems to recognize the principle proposed, for he says, after discussing the question of the mingling of lawful and unlawful considerations:

"Aside from this, in the present case the promise on the part of the woman which was of value to the man was the promise to care for him. The promise not to marry was a mere incident to the main purpose, entered into simply because it was supposed, by remaining single, the woman could the better perform her contract. It was immaterial to the man whether she married or not so long as she fulfilled her promise as to care. In other words, the promise to remain unmarried did not enter into or become part of the substance of the general agreement; that agreement was for the performance of services. If the performance was adequate, and the services rendered in a satisfactory manner, their value could neither be enhanced nor diminished by the fact that they had been rendered by a single woman rather than a married one; so that, had the plaintiff married, yet, if she satisfactorily performed her contract, the recipient of the services would lose nothing by the fact of marriage."

There are other cases, such as Western Union Telegraph Company v. B. & S. W. Ry. Co. (C. C.) 11 Fed. 1, which it seems impossible to reconcile with the conclusion which I have reached. But, on the whole, I am of the opinion, as before indicated, that in the case at bar there can be no severance of the legal and illegal parts of the contract executed between the plaintiff and defendants; and that, therefore, the plaintiff is not entitled to any relief under its complaint. At the time the action for the injunction was tried before me there was also tried, without a jury, an action brought by the same plaintiff against the same defendants to recover $119 and interest, which is conceded to be due, and also by virtue of said contract, and at the terms fixed therein, a balance due for services rendered by the former to the latter. If I am right in the decision which I reached in the first action, this claim must also fail. A recovery based purely upon an illegal contract, where the contract is necessarily a part of the plaintiff's case, cannot be had. Bank v. Gerety, 153 N. Y. 411, 47 N. E. 793.

Whether or not, under the circumstances disclosed here, a recovery could be had for services rendered as upon an implied contract, is a

different question, and need not be here decided. Tracy v. Talmage, 14 N. Y. 162, 67 Am. Dec. 132; Saratoga County Bank v. King, 44 N. Y. 87; Arnot v. Pittston & Elmira Coal Co., 68 N. Y. 558, 23 Am. Rep. 190; Page, Cont. § 519; Phoenix Bridge Co. v. Keystone B. Co., 142 N. Y. 425, 37 N. E. 562.

Ordered accordingly.